580 So.2d 536 (1991)
Eugene V. COUSINS
v.
The CITY OF NEW ORLEANS and the New Orleans Fire Department.
No. 90-CA-1110.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
*537 Edward P. Gothard, Edward J. McCloskey, McCloskey, Langenstein & Stoller, New Orleans, for plaintiff/appellant.
William Aaron Jr., City Atty., Val K. Scheurich, III, Deputy City Atty., Beverly Zervigon, Acting Chief Deputy Atty., Joyce M. Gerdes, Louella Givens, Asst. City Attys., New Orleans, for defendants/appellees.
Before ARMSTRONG, PLOTKIN and BECKER, JJ.
ARMSTRONG, Judge.
Plaintiff, Eugene V. Cousins, appeals the trial court's judgment granting defendant, The City of New Orleans (the "City"), an offset for worker's compensation benefits based upon his receipt of disability benefits from the Firefighters' Pension and Relief Fund. We now reverse.
Plaintiff filed this worker's compensation suit after the City rejected a recommendation in his favor issued by the Office of Workers' Compensation. The parties stipulated that plaintiff was an employee of the New Orleans Fire Department on December 9, 1983 when he suffered an injury occurring in the course and scope of his employment. It was further stipulated that as a result of that injury plaintiff sustained a permanent disability which prevents him from earning ninety (90%) percent of the wages he earned at the time of the accident. Submitted with plaintiff's memorandum "by stipulation" were three "exhibits" including the depositions of plaintiff and a member of the Board of Trustees of the Fireman's Pension and Relief Fund.
The matter was submitted to the trial court on the record and a judgment was rendered finding that the City was entitled to a setoff under La. R.S. 23:1225(C)(1) for amounts received by plaintiff as a disability pension. The trial court found that plaintiff's disability benefits completely setoff any worker's compensation benefits he would otherwise be entitled to receive from the City. The trial court also ordered the City to pay plaintiff outstanding medical expenses in the amount of $2,125.00 plus interest.
La. R.S. 33:2101 et seq. provides for the Firefighters' Pension and Relief Fund for the City of New Orleans. La. R.S. 33:2117 provides that a firefighter may retire after at least twenty (20) years service and receive as a pension one-half the salary he was receiving at the time of his retirement plus additional percentages for years of service beyond twenty years. The statute *538 also provides that "[a]fter twenty years continuous service a member shall not be deprived of his pension rights or death benefits."
La. R.S. 33:2113 provides that upon application by a member who has been found to be physically or mentally permanently disabled and incapacitated from performing his duties as a member of the fire department, the member "shall" be retired. His name shall be placed on the pension roll and he shall be paid in monthly installments from the pension and relief fund a sum equal to two-thirds the monthly compensation allowed him as salary at the date of his "retirement," or the amount provided in La. R.S. 33:2117, whichever is greater, provided the other conditions of La. R.S. 33:2117 are met. Plaintiff receives the amount provided under La. R.S. 33:2117. Monthly disability and tenure-based retirement pensions both come out of the same fund.
At the time of plaintiff's injury and filing of his suit in district court, La. R.S. 23:1225(C)(1) of the Louisiana Worker's Compensation Law provided:
"If an employee receives remuneration from: (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury." (Emphasis added)
In Lambert v. Board of Trustees Employees' Retirement System, City of New Orleans, 517 So.2d 1282 (La.App. 4th Cir. 1987), writ denied, 519 So.2d 771 (La.1988), this court held that because this provision uses the conjunctive "and" it applies only when the employee is receiving remuneration from all four sources. Subsequent to the Lambert decision the legislature amended R.S. 23:1225(C)(1), substituting the disjunctive "or" for "and." Acts 1989, No. 454, Section 6, effective January 1, 1990.[1] As the statute now reads, worker's compensation benefits may be reduced when the employee is receiving benefits from one of the sources listed.[2] In Blanson v. State, Dept. of Public Safety, 571 So.2d 181 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1142 (La.1991), this court held that the change accurately reflected the original meaning and intent of the statute, and was to be applied retroactively. Id. at 183.
Assuming for the sake of argument that plaintiff's disability pension is one contemplated by La. R.S. 23:1225(C)(1), the City may be entitled to a setoff for worker's compensation benefits it has paid and is obligated to pay in the future only to the extent and proportion it has funded plaintiff's firefighter's disability pension. The burden is on the employer to establish this amount.
The record contains the deposition of Bernard V. Nicolay, who was at that time one of the ten members and secretary-treasurer of the Board of Trustees of the Firefighters Pension and Relief Fund. Nicolay's deposition was noticed by the City.
Nicolay stated that there were two pension systems, the "old" and the "new." Those members hired after 1986 came under the new system. Those hired before 1986 were under the old system, although they could choose to come under the new system. The employee contributions were the same under both systems.[3] Nicolay *539 stated that the new system is actuarially funded  it contains monies to pay future liabilities  while the old system is "pay-as-you-go," meaning that the current contributions/assessments from firefighters go to pay the current benefits being received by retired firefighters, with the City paying the balance. Under the old system there is no investment of monies contributed by employees nor money in a fund to pay future benefits. The amount contributed by the City varies from year to year.
Nicolay stated that plaintiff, who was hired in 1961, was in the old system. He said that plaintiff had contributed $12,752.90 to the pension and relief fund at the time he retired. In response to a question by the Deputy City Attorney, Nicolay stated that there was "no way" of calculating or knowing the amount the City contributed to the old system to fund plaintiff's disability pension. He said there was no formula for employee-City contributions, the City simply made up the difference between the employee contributions and the amount payed out in pensions.[4]
The City maintains, and the trial court apparently found, that the City was entitled to a setoff for all amounts of plaintiff's disability pension over and above his total contribution, $12,752.90. Under this theory the proportion of plaintiff's disability pension benefit plan funded by the City was the amount not contributed by plaintiff. We find error with the method employed by the trial court to calculate the setoff. Under the old system, the contributions of current employees go directly to pay benefits being received by retired employees with the balance, if any, being paid by the City. Plaintiff receives no portion of the funds contributed by him during his employment, nor does he receive any interest benefit based on these contributions  those contributions went directly to pay the pensions of retirees. Nor does he receive any portion of payments made by the City during his term of employment, or any interest benefit based on such payments  the City payments went directly to pay the pensions of retirees.
The only monetary benefits plaintiff has received, or will receive from the City through his disability pension, are the payments the City has made or will be making in the future to make up the difference between the contributions of current employees and the amount paid out in benefits to current retirees such as plaintiff. The City has not established how much it has contributed to pay its share of past benefits received by plaintiff, nor how much it will contribute to pay its share of future benefits. If we simply allow the City a setoff in the amount not contributed by plaintiff, the City will receive the benefit of contributions made by current employees. The City is only entitled to a setoff in the proportion it has funded a pension plan. The City is not entitled to a setoff for contributions made by current employees, who are directly funding plaintiff's disability pension.
For the foregoing reasons we find that the City failed to establish the proportionate amount of plaintiff's disability pension it has funded, and thus failed to prove that it was entitled to a setoff under La. R.S. 23:1225(C)(1). The trial court was clearly wrong in finding otherwise.
One of the issues presented to the trial court was the proper calculation of worker's compensation benefits. The trial court did not issue a finding as to the specific amount of worker's compensation plaintiff was otherwise entitled to, it simply found the City's calculations "correct" and then found that such benefits were completely setoff by the disability benefits.
The parties stipulated that as a result of his injury in the course and scope of his employment with the fire department plaintiff sustained a permanent disability which prevents him from earning ninety (90%) percent of the wages he earned at the time of the accident. This was effectively a *540 stipulation that plaintiff was entitled to supplemental earnings benefits under La. R.S. 23:1221 which at the time of plaintiff's injury and filing of suit provided in pertinent part:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
"(3) Supplemental earnings benefits.
"(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment....
* * * * * *
"(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks...."
Pursuant to the stipulations of the parties plaintiff is entitled to supplemental earnings benefits. Once it has been established that a plaintiff is entitled to supplemental earnings benefits the amount of such benefits must be calculated. The parties stipulated that plaintiff's average monthly wage at the time of injury was $2,441.94. It now must be determined what plaintiff is earning or is able to earn.
In his deposition plaintiff stated that he has a painting contracting business which he took over from his father in 1973. At the time of plaintiff's deposition he was still operating this business, although he was not earning as much as he had before his injury because he was not able to personally do as much work as he had been. At the time of his deposition plaintiff had two employees working for him. Plaintiff said that from January 1985 to November 1985 he grossed approximately $23,000.00 from the painting business. He stated that he had no idea of his profit  "earnings." The deposition testimony reflected that plaintiff turned over income tax records for the years 1983 and 1984 in connection with this litigation. Based upon the deposition testimony these records apparently would show how much he netted ("earned") from the painting business during those years. However, these are not found in the record nor are any such records referred to in the briefs of counsel for either side.
Plaintiff argues that because he was in the painting contracting business at the time of his injury, any amount earned by him through this business should not be considered "as monthly wages the employee is able to earn in any month thereafter in any employment." La. R.S. 23:1221(3)(a). That is, plaintiff submits that any reduction of supplemental earnings benefits may be made only on wages earned through some new employment endeavor begun after his injury, not on wages earned through employment he was engaged in at the time of the injury, even though that employment was not related to his worker's compensation claim.
We need not address this issue. The burden is on the employer to prove by a preponderance of the evidence the average monthly wages the injured employee is able to earn. See: Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). The evidence upon which the parties submitted this suit for decision does not establish a specific amount earned by plaintiff in other employment, nor is there evidence from which we can make such a determination. Therefore, plaintiff is entitled to supplemental earnings benefits equal to seventy-four (74%) percent of the difference between ninety (90%) percent of the average monthly wages at the time of injury and $0.00. Ninety (90%) percent of plaintiff's stipulated monthly wages at the time of injury, $2,441.94, is 2,197.74. Seventy-four (74%) percent of this amount is $1,626.33. Weekly compensation benefits calculated under La. R.S. 23:1021(10)(b), as in effect at the time of plaintiff's injury and filing of suit, would be $406.58.
However, La. R.S. 23:1202(A)(1) provides that the maximum amount of weekly worker's compensation benefits shall be seventy-five *541 (75%) percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law. The statute further provides that in no event shall monthly supplemental earnings benefits exceed four and three-tenths times temporary total disability benefits. Therefore, this case will be remanded to the district court to determine the maximum amount of supplemental earnings benefits plaintiff is entitled to in light of the limit imposed by La. R.S. 23:1202(A)(2). See: Daigle v. Sherwin-Williams Co., supra.
For the foregoing reasons we affirm that part of the trial court judgment ordering the City to pay plaintiff $2,125.00 plus interest for medical expenses. We reverse that part of the judgment finding that the City was entitled to a setoff and remand this case for determination of the maximum amount of weekly supplemental earnings benefits plaintiff is entitled to receive under La. R.S. 23:1202(A)(2), plus interest.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
PLOTKIN, J., dissents with written reasons.
PLOTKIN, Judge, dissenting with written reasons:
Because I believe that the defendant, City of New Orleans, should be given the opportunity to present further evidence concerning the percentage of plaintiff's disability pension it funds, I respectfully dissent from the majority's decision. I would remand the case for further proceedings limited to evidence on this issue.
The majority opinion fails to properly distinguish between disability and retirement pensions, choosing instead to pretermit a decision concerning the type of pension received by plaintiff, Eugene V. Cousins. LSA-R.S. 23:1225(C) provides for a set-off against worker's compensation liability only if the payments received by the plaintiff are disability pension payments. If the payments are retirement benefits, there is no set-off.
By focusing on the City's failure to prove the proportion of the payments it funds, the majority attempts to avoid classifying the payments being received by the plaintiff as either disability or retirement. However, as previously stated, the characterization of the payments is crucial because the determination of whether the City is entitled to a set-off is dependant on that decision. Unless the payments are classified as disability, the City has no burden of proving the percentage of payments it funds. Therefore, I believe that the majority errs in failing to characterize the payments.
Actually, a close reading of the record reveals that no real disagreement about the characterization of the payments exists. During his deposition, the plaintiff stated unequivocally that the payments were "a disability pension." Nonetheless, the plaintiff argues in this court that the payments he receives are not "disability" as contemplated by LSA-R.S. 23:1225 because of his unique status. The plaintiff contends that the statute should not be applied to his situation because he was eligible for regular retirement by virtue of his 20-plus years of service at the time of his disabling accident.
The testimony of Bernard V. Nicolay, trustee of the City's pension board, indicates that the plaintiff would receive the same amount of money under either the disability or retirement pension systems, but that the plaintiff intentionally chose the disability system because of the tax benefits. The plaintiff cannot chose the disability pension for one purpose and the retirement pension for another, depending upon which best serves his purposes. He must be bound by the consequences of his choice to accept a disability pension for all purposes, whether or not it is beneficial to him. Thus, I believe the trial court correctly held that the plaintiff is receiving disability pension payments.
However, I believe that both the trial court and the majority incorrectly determined the amount of set-off due the City. The statute says that the City is entitled to a set-off in the "proportion funded by an employer." The trial court improperly applied this article, giving the City the benefit *542 of all payments not funded by the employee, which is not what the statute says. The majority then refused to give the City the benefit of any set-off, despite the clear evidence that the City funds some proportion of the plaintiff's benefits, because the City failed to prove the exact amount of its contributions. Both approaches are wrong.
Unquestionably, the City is entitled to some set-off in the instant case. Additionally, since the City seeks a reduction in its worker's compensation obligation, the City does indeed have the burden of proving the proper amount of the reduction. However, the fact that this court cannot make that determination on the basis of the record as it stands should not be construed to foreclose the City from having a further opportunity to prove its case. At trial, the City depended exclusively on its argument that it is entitled to a set-off in the proportion of the disability payments not funded by the employee. Although it is a creative argument, it cannot be accepted under the provisions of the statute. Nevertheless, since no rule has been fashioned for this particular situation, this court should not summarily reverse the trial court's decision without allowing the City an opportunity to present additional evidence concerning the amount of payments it actually makes. I would remand the case to the trial court to give the City an opportunity to prove the amount of its contribution.
NOTES
[1] When it amended La. R.S. 23:1225(C)(1) in 1989 the legislature also omitted some language contained in the 1983 version. This appears to have been an error.
[2] To make sense of this section of the statute it must be read as applying to those cases where the employee receives benefits under the Louisiana Worker's Compensation Law and in addition receives remuneration from one or more of the other listed sources.
[3] La. R.S. 33:2103.2 provides for the deduction of a percentage of the salaries of all members of the fire department employed after December 31, 1967, or those employed before that date who elect to come under the retirement plan. The percentage was five (5) percent before July 1, 1972 when it rose to six (6) percent.
[4] Under La. R.S. 23:2104, 23:2105, and 23:2106, fines assessed against firefighters, fines imposed by courts for violations of municipal fire ordinances, sale of condemned firefighting apparatus and equipment, and gifts to the department or individual firefighters all go into the pension and relief fund. These must be attributed to the City.