CIACCIO, Judge.
Plaintiff, Jose Silva, sued his former employer, defendant, Winn-Dixie Louisiana, for worker’s compensation benefits, penalties and attorney fees he claims were due as a result of a work related injury he allegedly sustained rendering him totally and permanently disabled. The parties agreed to have the case tried by a commissioner and voluntarily executed a waiver prepared by the Civil District Court for the Parish of Orleans whereby they waived certain provisions of LSA-R.S. 13:1171, allowing the commissioner to prepare the judgment for the immediate signature of the district court judge.
After a trial on the merits, the commissioner prepared written reasons for judgment and a judgment in favor of Winn-Dix-ie and against plaintiff dismissing the suit at his costs. However, finding plaintiff was entitled to further compensation, the commissioner ordered Winn-Dixie to pay him additional weekly benefits in addition to certain medical expenses and expert witness fees. The district court judge signed the judgment. It is from this judgment that plaintiff appealed.
Plaintiff appeals raising seven assignments of error:
1. The lower court failed to follow the mandatory provisions of LSA-R.S. 13:1171 in a case referred to a court commissioner.
2. The lower court set up a procedure whereby the litigants waived the mandatory provisions established to protect their rights to due process.
3. The lower court allowed the litigants by stipulation to impinge upon or interfere with the court’s general powers, duties and prerogatives.
4. The lower court gave effect to stipulations that are in derogation of the law.
5. The lower court unequitably taxed all costs against the prevailing party in favor of the party cast.
6. The lower court should have awarded the injured employee all medical expenses accrued by virtue of the on-the-job accident and not limited them to an arbitrary date.
7. The lower court should have awarded interest, penalties, and/or attorney fees on all of the benefits that the defendant owed the plaintiff.
The first four assignments of error concern the legality of the waiver executed by the parties waiving the provisions of LSA-R.S. 13:1171(D) through (G).
LSA-R.S. 13:1171(D), (E), (F) and (G) provides the following:
D. When a case is referred to a commissioner, the commissioner shall receive all evidence and prepare a written report of his findings which shall contain the following elements:
1. A statement of the pleadings.
2. A statement of the facts as found by the commissioner.
3. An opinion based on the pleadings and facts.
4. A judgment as he determines should be rendered with the recommendation to the judge that it be made the judgment of the court.
E. The report shall be filed by the commissioner with the clerk of the civil district court, who shall at once give written notice to counsel of record that such report has been filed. This notice shall be served by the civil sheriff.
*809 F. Exceptions to the report of the commissioner may be filed within ten days after notice, as required by R.S. 13:1171(E).
G. If exceptions are filed to the report within ten days, the judge shall set them down for hearing, at the most convenient time, shall hear argument, and decide the exceptions on the record as made up before the commissioner.
By voluntarily signing the District Court waiver the parties in effect agreed that the Commissioner would hear the case, take evidence, make recommendations to the district judge as to findings of fact and conclusions of law and then would prepare the judgment for the immediate signature of the trial judge, reserving to each party the right to appeal therefrom.
Plaintiff now argues that the signing of the waiver effectively denied him a fair trial and his right to due process, and is therefore unconstitutional.
The record reflects that after the matter was set for trial before a district court judge and continued three times, plaintiff requested that the matter be tried before a commissioner to avoid any further delay. Winn-Dixie consented to have the case tried by the commissioner. When the district court requested that the parties sign the waiver form, plaintiff’s attorney did so knowingly and voluntarily. If plaintiff had any objections to the matter being tried before the commissioner and/or the terms of the waiver, he could have agreed to the continuance in the district court and waited to have the matter tried before the judge, or he could have refused to sign the waiver and/or raised an objection to it prior to the commencement of the trial. We find plaintiff’s failure to take any of the foregoing actions precludes him from raising this issue on appeal.
Plaintiff’s remaining assignments of error concern his entitlement to worker’s compensation disability benefits, medical expenses, attorney fees, interest and court costs.
The commissioner’s findings of fact as set forth in his well worded reasons for judgment are as follows:
The parties waived the provisions of R.S. 13:im(D), (E), (F) & (G).
On May 4, 1988 plaintiff, while in the scope of employment as a refrigeration mechanic was knocked from the deck of a tractor-trailer where a roller door slipped, striking him in the left side of his head. He fell towards the ground, and his fall was broken by a co-employee.
Plaintiff failed in his attempt to prove any disability. The medical evidence is against him.
His primary contention is that he is disabled because of headaches and because of pain in his groin. At no time during trial did he manifest pain or disability.
Dr. David Reiss was the first doctor who examined plaintiff after his accident. From the history, complaints and examination Dr. Reiss was satisfied that plaintiff did not have a concussion. He referred him to Dr. Melvin Parnell, an or-thopaedic surgeon, who likewise concluded that plaintiff did not have a concussion. Both doctors found plaintiff’s memory to be clear, that he was able to give a detailed history, that there was no amnesia present, no objective findings, no evidence of acute abnormality, no loss of consciousness at the time of the accident, and therefore no post-concussive syndrome.
Dr. Adams, a board certified neurologist, who saw the plaintiff on three occasions and who was experienced in diagnosing concussions, was satisfied that plaintiff did not experience a concussion on May 4, 1988.
Because of conflicting opinions between two neurologists the parties requested that the court appoint an independent medical examiner in the field of neurology to examine Jose Silva. The Court appointed Dr. Michael A. Wilensky who examined plaintiff on February 6, 1989 and concluded that his groin pain should be pursued by urological evaluation, and if urological clearance was given and if there was no evidence of disc or nerve pathology on EMG then the plaintiff should return to work.
*810 On March 6, 1989 he was examined by Dr. Valentine A. Earhart, a urologist. The inguinal area was within normal limits; rectal exam was normal; urinalysis was within normal limits and he had no genitourinary malady or condition of any significance. The doctor recommended that plaintiffs adductor and muscle tenderness be evaluated by an orthopedist or neurologist.
On March 27, 1989 he was given an electromyography-nerve conduction velocity test by Dr. Wilensky. The were no active denervation with normal findings, and Dr. Wilensky believed that he had mild chronic neurogenic atrophy in the left L5 distribution, but no focal or paroxysmal abnormalities were noted.
Dr. Aaron J. Friedman first saw Jose Silva on June 24, 1988. And from the history given, which related to subjective complaints only, Dr. Friedman reached a diagnosis of post concussive syndrome, and he testified that in reaching such a diagnosis it was not necessary to have a loss of consciousness. All of the other doctors testified that without a loss of consciousness there could be no diagnosis of post concussive syndrome.
Dr. Friedman testified that the accident itself could have caused the post concussive syndrome and that it was not necessary to have objective symptoms in order to reach such a diagnosis.
It is difficult to attribute as medically sound the statements made by Dr. Friedman. He believed that Jose Silva had headaches because Jose Silva told him he had headaches. He stated that when Jose Silva would tell him “I’m O.K.” he will then release him. He stated that if Jose Silva says “I can go back to work” then he can go back to work. And the reason he knew that Jose Silva received a blow on the head was because Jose Silva told him so. Jose Silva told Dr. Friedman that he could not go back to work. He then referred him to an attorney.
It seems most significant that on his first visit to Dr. Friedman plaintiff did not complain of double vision, of nausea, vomiting or a blurred vision. E.E.G. was normal. Neurological examination was normal, and there were no objective signs of disability. On a later visit the complaints were headaches and double vision. And it was from that statement that the doctor diagnosed post concussive syndrome and concluded that he was disabled. His prognosis was equally incredible, to wit, that Jose Silva would remain disabled as long as he complained of headaches.
Dr. Friedman referred Jose Silva to an orthopaedic surgeon, an eye doctor and an ear doctor, but none were able to help the situation.
Dr. Harold Karas, a chiropractor, testified that Jose Silva had a misalignment of the spine and he produced x-rays to support his finding, and pointed to a defect at the Cl-2 level.
Dr. Parnell examined those same x-rays and pointed out that because of the position that Jose Silva was placed at the time the x-rays were taken there was a rotation of his spine which invalidated the x-rays. It was the opinion of Dr. Parnell, an orthopaedic surgeon, that there was no defect at the C1-C2 level.
Jose Silva, on his own, sought the advice of two orthopaedic surgeons but neither was able to help him. Jose Silva returned to Dr. Parnell, complaining of low back pain, left groin pain and a swelling of his left foot. The swelling of the left foot would have been the first objective finding, but Dr. Parnell saw no swelling. Jose Silva had a full range of motion of the lumbar spine, he had no muscle spasms, no signs of atrophy, straight leg testing was negative and a neurological examination was normal. Dr. Parnell did find some tightness of the hamstring and he recommended physical therapy. Jose Silva returned to Dr. Parnell on July 21, 1988, at which time he had a full range of motion of the lumbar spine and there was less tightness of the hamstring.
On August 11, 1988 the visit by Jose Silva to Dr. Parnell found him to be normal in every respect and he was discharged to return to work as of August 12, 1988.
*811 Jose Silva was paid benefits from the date of his injury to May 23, 1988. He went back to Dr. Parnell on July 14, 1988 and was discharged fit to return to work as of August 12, 1988. He was paid benefits from July 14, 1988 through August 11, 1988. He was not paid and is entitled to $262.00 per week for an eight week period, from May 23rd, 1988 to July 14, 1988. He is likewise entitled to have all medicals accrued through July 14, 1988 paid by defendant.
Defendant is obligated to pay to Dr. Wilensky, Dr. Reiss, Dr. Parnell and Dr. Adams the sum of $350.00 to each for testimony given as experts.
Plaintiff contends the trial court erred in finding that he failed to prove he was permanently disabled and unable to work. We disagree.
Under LSA-R.S. 23:1221(2)(c), in order for a claimant to recover compensation for a permanent total disability, he must prove by clear and convincing evidence that he was disabled to such an extent that he could not work. At the trial, evidence was presented of evaluations of the plaintiff by six physicians and one chiropractor. Only one physician, Dr. Aaron Friedman, plaintiff’s treating neurologist, could state that plaintiff was unable to work. Dr. Friedman attributed plaintiffs disability to post concussive syndrome resulting from the work related accident. Dr. Wilensky, the court appointed neurologist who recommended additional testing, recommended that plaintiff return to work if there was no evidence of disc or nerve pathology. Further examination by Dr. Earhart, the urologist, and the two orthopedists consulted by plaintiff, Drs. Robert Shackleton and Dr. Raoul Rodriguez, revealed no urological or orthopedical damage. The three other physicians who examined plaintiff, Dr. Reiss, Dr. Adams and Dr. Parnell could find no objective physical reasons that supported plaintiffs subjective complaints of headaches or that plaintiff suffered a concussion from the accident.
An appellate court must give great weight to the factual conclusions of the trier of fact concerning a work related disability. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review unless manifestly erroneous or not supported by the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990); Rosell v. Esco, 549 So.2d 840 (La.1989).
A review of the entire record indicates that the commissioner committed no error in concluding that plaintiff failed to present clear and convincing evidence of the existence of a total and permanent disability. After hearing the expert testimony presented by both parties, the commissioner chose to believe the defendant’s medical experts and to reject the testimony of Dr. Friedman. In accordance with Sistler and Rosell, we cannot find that the commissioner’s factual conclusions and credibility determinations, adopted by the district court judge, are clearly wrong and thus, will not be disturbed on appeal.
As the trial court ordered Winn-Dixie to pay plaintiff disability benefits for the eight week period between May 23, 1988 and July 14, 1988 and also all medical expenses incurred by plaintiff from May 4, 1988 through August 11, 1988, we find the lower court erred in assessing all costs of the suit against him. We therefore amend the judgment of the trial court and assess all costs of the suit through the trial against Winn-Dixie and the costs of this appeal against plaintiff. In all other respects the trial court judgment in favor of Winn-Dixie is affirmed.
AMENDED, AS AMENDED AFFIRMED