618 So.2d 483 (1993)
Donna Marie McCRAY
v.
COMMERCIAL UNION INSURANCE COMPANY and Association for Retarded Citizens.
No. 92-CA-2123.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
*485 Denis Paul Juge, Kelann E. Larguier, Sutherland, Juge, Horack & Dwyer, New Orleans, for defendant/appellant.
Christopher Grace, Jr., Metairie, for plaintiff/appellee.
Before ARMSTRONG, JONES and WALTZER, JJ.
WALTZER, Judge.
This case concerns a worker's compensation award from the trial court. Defendants, Commercial Union Insurance Co. and Association for Retarded Citizens, appeal the judgment, which found the plaintiff, Donna McCray, totally and permanently disabled. The defendants were ordered to continue worker's compensation in the amount of $260.61 per week, as well as pay for past and future medical expenses, penalties and attorney fees.

FACTS;
On October 15, 1987, twenty-five year old Donna McCray sustained injuries to her neck and back while working for the Association for Retarded Citizens. On that date, plaintiff was attempting to help a 260 pound paraplegic from a bathtub to her wheelchair. The plaintiff slipped and fell, with the woman on top of her, on her back in the bathtub.
Plaintiff suffered severe back and neck pains as a result of the fall. Other effects included recurring headaches, numbness in her arms, urinary and bowel problems, and severe depression. At the time of trial, the plaintiff was walking with the aid of a walker and had a catheter in one of her arms.
This appeal is from the second judgment rendered by the trial court on April 24, 1992. The first judgment was on December 6, 1990. The plaintiff brought that cause of action after defendants had refused compensation and payments for psychiatric treatments for a number of months, forcing the plaintiff to declare bankruptcy. A two day trial was held on December 5th and 6th of 1990 for the sole purpose of hearing the testimony of three psychiatrists, one of them retained by the defendants. The record from those proceedings clearly indicate that the plaintiff at that time was severely depressed and suicidal. In his judgment, the trial judge found the plaintiff totally and permanently disabled, and that the primary cause of her emotional state was the pain, discomfort, immobility and disability resulting from the work related accident. The defendants were ordered to continue worker's compensation and to pay for plaintiff's past and future psychiatric treatments.
The appeal now before us is from the judgment rendered on April 24, 1992. Plaintiff again filed suit against defendants after they arbitrarily refused payment of several outstanding medical bills and after they refused authorization for a prescribed cervical surgery. After a two and a half day trial, which heard the testimony of four physicians, the trial judge again ruled in favor of the plaintiff.
That judgment: (1) found the plaintiff to be permanently and totally disabled, (2) ordered the defendants to authorize and pay for plaintiff's prescribed cervical surgery, as well as all related medical services, (3) ordered the defendants to pay for all outstanding medical bills from St. Charles General, CPC Eastlake Hospital, Dr. Olinde and Dr. MacGregor, (4) ordered the defendants to pay attorney fees to Mr. Christopher Grace in the amount of $28,375.00, (5) ordered the defendants to pay penalties in the amount of 12% of all amounts not timely paid, including: worker's compensation benefits between May 3, 1989 to March 21, 1990 in the amount of $11,988.06, the bill from St. Charles General amounting to $17,313.50, the bill from CPC Eastlake Hospital for $28,116.47, and the bill from Dr. *486 Olinde of $1,760.00. This judgment also assessed all costs of the proceedings, including the fees for the expert witnesses, against the defendants.
On appeal, defendants raise four assignments of error: (1) that the trial court was in error in finding the plaintiff permanently and totally disabled from October 15, 1987 forward, (2) the trial court erred in awarding future medical expenses, (3) the trial court erred in allowing a number of plaintiff's exhibits be admitted as competent evidence, and (4) that the award of $28,375.00 as attorney fees is unjustified and excessive.

PERMANENT AND TOTAL DISABILITY
In their first assignment of error, defendants argue that the plaintiff failed to prove by clear and convincing evidence that she is permanently and totally disabled. This assignment of error lacks merit.
Defendants are correct in stating that the plaintiff had the burden of proving by a preponderance of the evidence that she is permanently and totally disabled. Foreman v. Barras Lighting Electric Company, Inc., 509 So.2d 698 (La.App. 3d Cir.1987), writ den., 512 So.2d 441 (La. 1987). Furthermore, the worker's compensation statute, as amended in 1986, provides that proof of a permanent disability must be with clear and convincing evidence. LSA-R.S. 23:1221 states, in pertinent part:
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of subparagraph 2(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment of self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The defendants, in a lengthy argument in their appellant brief, submit that the plaintiff failed to prove her disability by clear and convincing evidence. Piece by piece, the defendants attempt to discredit the testimony of the plaintiff and the two physicians testifying on her behalf. However, a review of the record in its entirety, clearly indicates that the plaintiff sufficiently proved her permanent and total disability.
The plaintiff, as noted by the trial judge, used a walker and moved very slowly in getting to the witness stand. She had a catheter in one of her arms. She stated that she was in considerable pain, and was still greatly depressed about her condition. She testified that she desperately wanted the neck surgery to relieve some of the distress she has been feeling. Moreover, she recounted an incident in Dr. MacGregor's office, which occurred shortly before the hearings, where she threatened to commit suicide because of her considerable pain and suffering, and showed the psychiatrist the gun with which she intended to use to execute her plan. The plaintiff further testified that she had received numerous *487 letters and several telephone calls from collection agencies demanding that she pay the St. Charles General bill, as well as other medical bills.
Dr. John MacGregor, the plaintiff's treating psychiatrist for several years, testified at trial that he was then seeing the plaintiff three times a week. He stated that while Ms. McCray had made a good deal of progress with him, that, in his opinion, she was still very much in need of continuing psychological treatment. He also spoke of the recent suicide threat by plaintiff, and believed that the surgery would greatly help her condition if she were to get some relief. Dr. MacGregor also testified that, in his opinion, the plaintiff was not ready or able to do any type of work. Finally, this witness testified as to the problems he had been having in having his bills paid by the defendants.
Dr. Watermeier, the plaintiff's treating orthopedist since November of 1987, testified about the plaintiff's condition from 1987 forward. During those four and a half years, Dr. Watermeier ordered numerous tests, including: MRIs, CAT Scans, thermograms, myelograms, cervical discograms and others. While he testified that many of the results were normal, he stated that several of the tests indicated a narrowing at the C4-5 level, and that the disc at this level was accepting and retaining more fluid than normal. An EMG indicated an abnormality with the contracting of her muscles in her left arm and side. A thermogram further confirmed that the plaintiff was suffering abnormalities with the nerves in her left shoulder and arm. A cervical MRI and a myelogram revealed mild spondylosis, arthritis and possibly a herniated disc. Another MRI revealed an abnormality in the lumbar region at L4-5. Dr. Watermeier testified that the plaintiff continually had complaints of pain and discomfort. After evaluating the plaintiff's tests and history, Dr. Watermeier recommended cervical fusion surgery, which he stated should relieve much of the pain. Dr. Watermeier further stated that he believed that the plaintiff would also benefit from lumbar surgery, but that he suggested the plaintiff lose weight and get into better physical condition before undergoing that procedure.
Dr. Nutik, an orthopedist retained by the defendants, concluded after two examinations that the plaintiff would not benefit from cervical surgery at the C4-5 level. Dr. Nutik stated that the discograms and the thermograms ordered by Dr. Watermeier were unreliable tests. Dr. Nutik testified, on direct examination, that he found no abnormalities at the C4-5 level, but that he had not seen either of the two CAT Scans ordered by Dr. Watermeier, which would best show whether a narrowing in that region existed. He further stated that while the plaintiff was suffering pain, and had a limited range of motion in every direction, that she should be able to work. However, he confirmed Dr. Watermeier's diagnosis that the plaintiff might benefit from lumbar surgery.
Dr. Olinde, a psychiatrist, treated the plaintiff for a thirty day period while she was in Eastlake Hospital. Dr. Olinde's findings concluded that the plaintiff was very depressed, but also very immature. He stated that he spoke several times to Dr. Watermeier concerning her physical condition and the possibility of surgery. His testimony about his discussions with Dr. Watermeier was very inconsistent; he once stated that Dr. Watermeier told him that there was no objective evidence supporting surgery, but later stated that Dr. Watermeier told him of definite nerve and narrowing problems in both the cervical and lumbar areas. Dr. Olinde concluded that part of the plaintiff's depression was from the fact that she might not get the surgery, but he did not want to state whether or not the surgery would help.
In every worker's compensation case, the trial court must examine the totality of the evidence, lay and medical, in making its determination of whether the plaintiff is permanently and totally disabled resulting from a work related injury. Dominick v. CNA Insurance Company, 497 So.2d 758 (La.App. 3d Cir.1986), writ den., 501 So.2d 231 (La.1987); Williams v. State of Louisiana Office of Risk Management, *488 489 So.2d 461 (La.App. 3rd Cir.1986). Such a determination shall be given great weight on appeal and will not be disturbed absent manifest error. Silva v. Winn Dixie Louisiana, 572 So.2d 807 (La.App. 4th Cir.1990), writ den., 575 So.2d 396 (La. 1991). After a thorough review of the record, and considering the testimony of all the witnesses as described above, we cannot find any error with the trial court's conclusions.
After hearing the testimony, the trial judge concluded that the plaintiff was permanently and totally disabled. We agree that there was indisputable evidence that the plaintiff suffers a good deal of pain, loss of mobility, severe depression, as well as other problems. Both of the plaintiff's treating physicians, who have been seeing the plaintiff for a number of years, stated that they did not believe that the plaintiff was able to work. The trial judge was free to give greater weight to the testimony of these treating physicians, as opposed to the physicians who only had limited examinations of the plaintiff. Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2d Cir.1992); Dumas v. Hartford Ins. Company, 583 So.2d 31 (La.App. 4th Cir.1991). While not every diagnostic test undergone by plaintiff confirms a physical problem in every part of the body tested, as defendants seem to suggest they should, such is an absurd requirement. The totality of the evidence, as adjudged by the trial court, proved by clear and convincing evidence that the plaintiff is permanently and totally disabled.
FUTURE MEDICAL EXPENSES AND SURGERY
In their second assignment of error, the defendants argue that the trial court erred in awarding plaintiff future medical expenses. Defendant is correct in arguing that a plaintiff is not entitled to an award of future medical expenses, and is entitled to such an award only as the expenses become due. However, the right to claim such expenses is always reserved to the claimant, even if such claims do not arise until the expenses are incurred. Campbell v. Luke Const. Company, 543 So.2d 1032 (La.App. 3d Cir.1989). Given the nature of this case, and the amount of evidence illustrating the defendants refusal to authorize and pay for many of the plaintiff's medical expenses, we believe that the trial court's judgment simply confirms the plaintiff's right to seek payment of such expenses as they become due. See LSA-R.S. 23:1203; See also Campbell, supra at 1039; Andersen v. Eagle Asbestos Company, 355 So.2d 1082 (La.App. 4th Cir.1978). This assignment of error is therefore without merit.
EVIDENCE ADMITTED AT THE HEARING FOR WORKER'S COMPENSATION
In their third assignment of error, defendants argue that several of the plaintiff's exhibits were improperly admitted into evidence. These exhibits included: Plaintiff Exhibit No. 99 which is a copy of a billing statement from Alternatives, Dr. Olinde's clinic, in the amount of $1,760.00, Plaintiff Exhibit No. 101 and 105, which were copies of a bill from St. Charles General in the amount of $17,727.61 and $17,277.25, and Plaintiff Exhibit No. 103 and 104, which were collection letters from Radiology Consultants and Uptown Radiology Associates.
The defendants argue on appeal that plaintiff never laid a proper foundation for any of these exhibits, as not one custodian from the offices from which the bills and notices were sent testified that the exhibits were true and original copies.
The rules of evidence are not strictly followed in worker's compensation proceedings. Stewart v. Louisiana Plant Service Inc., 611 So.2d 682 (La.App. 4th Cir.1992). Under Louisiana statute, the trial judge in such proceedings is not strictly bound to the rules of evidence ordinarily enforced in other proceedings. LSA-R.S. 23:1317.
The plaintiff testified that she received several of the bills and notices in question. These pieces of evidence were addressed to the plaintiff, and on their face appear to be the official documents of St. Charles General and/or the collection agencies. *489 The fact that the custodian was not called to verify that the documents were original and true does not make these pieces of evidence inadmissible for lack of foundation. Not every link in the chain of custody needs to be shown to lay a proper foundation in a worker's compensation proceeding. Lawless v. New Orleans Police Department, 550 So.2d 252 (La.App. 4th Cir.1989), writ den., 551 So.2d 1344 (La. 1989). This assignment of error is therefore without merit.
ATTORNEY FEES
In this assignment of error the defendants argue that (1) they should not be held liable for attorney fees as they did not act in an arbitrary or capricious manner when they refused to pay compensation and medical bills for a number of months, and (2) if this Court affirms the trial court's finding of arbitrary and capricious behavior, the amount awarded as attorney fees is excessive.
We first turn to the issue of whether an award for attorney fees was appropriate in this case. Under LSA-R.S. 23:1201.2, an insurer liable for worker compensation benefits and medical expenses who either discontinues or refuses to pay, "when such discontinuance (or failure to pay) is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims." LSA-R.S. 23:1201.2. Whether an insurer acted in an arbitrary or capricious manner is a determination of fact, which should not be disturbed by this Court on review absent manifest error. Our review of the record reveals that the trial court was correct in finding the defendants arbitrary and capricious, and in awarding attorney fees.
Defendants admit that they discontinued benefits for almost eleven months. However, they argue that they did so upon the conclusions of Dr. Nutik that the plaintiff could in fact do work. The defendants therefore submit that they were acting reasonably in discontinuing plaintiff's benefits.
However, Dr. Nutik's testimony regarding his examinations and conclusions about the plaintiff's condition would not have justified such a discontinuance. Dr. Nutik admits in his testimony that the plaintiff complained of suffering a significant amount of pain. He also stated that the plaintiff had a limited range of motion in every direction, and that he agreed with Dr. Watermeier that the plaintiff would benefit from a lumbar surgery. Dr. Nutik's conclusions, as we read them in the record, do not suggest that the plaintiff was able to return to work. The defendants even state in their first assignment of error that the plaintiff at best proved a temporary total disability, but not a permanent total disability. However, the same compensation is owed for temporary total disability.
Both Dr. Watermeier, plaintiff's treating orthopedist at the time, and Dr. MacGregor, plaintiff's treating psychiatrist at the time, testified that they never considered the plaintiff well enough to do any kind of work. Furthermore, defendants never offered a reasonable explanation for why they refused to pay for the plaintiff's outstanding medical bills. Given the weight of the evidence, which was available to the defendants at the time of their discontinuance, indicating that the plaintiff was not physically or mentally capable of working, we find that the trial court was correct in finding them arbitrary and capricious in discontinuing her benefits and not paying her medical bills. The trial court was not in error for awarding attorney fees.
In further support of this assignment of error, defendants argue that no work was needed for the plaintiff to recover her compensation benefits because defendants voluntarily reinstated them. This argument is utterly absurd. Defendants did not reinstate such benefits until just before the date of the first trial. It would be an incredible stretch for this Court to believe that the defendants would have voluntarily reinstated plaintiff's benefits had it not been for the efforts of her attorney.
*490 We now turn to whether the amount awarded as attorney fees, $28,375.00, was excessive. We initially note that great discretion is afforded the trial court in assessing a proper amount for attorney fees. Simmons v. Ford, Bacon & Davis Construction Corporation, 506 So.2d 1300 (La.App. 2d Cir.1987); Reynolds v. Wal-Mart Stores Inc., 445 So.2d 490 (La.App. 2d Cir.1984).
At the end of this case, after the trial judge found the defendants liable for attorney fees, he explained exactly how he came up with the figure of $28,375.00.
For the above reasons the Court hereby imposes the statutory penalties and will now address the issue of attorney fees. In the exhibit Mr. Grace has documented the fact that he has put in one hundred and one and a half hours prior to the trial of March 30th and April 1st and today. He estimates, and the Court concurs, an additional twelve hours is due for the work done on March 31st, April 1st, and today. Therefore, if we add the twelve hours to the previously introduced exhibit of a hundred and one and a half hours, we come to a conclusion of one hundred and thirteen and a half hours. Mr. Grace has requested the sum of $200 per hour. Because of the excellent work he has done herein and the constant pursuit he had to do herein, the Court is going to award the sum of $250 per hour as a proper amount that should be awarded to Mr. Grace for the excellent service he has performed for this down and out plaintiff whose body has been racked with pain and whose mind is one of almost non compos mentis. Therefore, as we take the sum of one hundred and thirteen and one half hours and multiply that by $250 an hour, the Court is doing the arithmetic right now. That figure comes to $28,375 to be paid, of course, by Commercial Union Insurance Company as a penalty and that will be the total fee for Mr. Grace.
After a review of the record, which is seven volumes long, and both trial court proceedings, which totaled to almost five days, and the testimony of physicians who testified, of which there were five, and the amount of time and effort needed to resolve this case in favor of plaintiff, and the excellent work of her attorney in doing so, we are in complete agreement with the trial court.
We further find that the plaintiff's attorney is entitled to attorney fees for the amount of time and effort necessary in responding to defendants' brief and arguing before this Court. We believe that the attorney could have spent no less than six and one half hours in preparing his brief and oral argument. Using the same fee as the trial court, an additional $1625.00 should be awarded to Mr. Grace for attorney fees, bringing the award for attorney fees to $30,000. We believe this figure to be fair given the amount of time and effort spent in obtaining and retaining the proper compensation owed to this plaintiff and payment of her medical expenses.
For these reasons, the judgment of the trial court is affirmed and amended to include an additional $1,625.00 to the $28,375.00 awarded as attorney fees.
AFFIRMED AND AMENDED.