| THIBODEAUX, Judge.
In this workers’ compensation case, Wal-Mart appeals a judgment of the Office of Workers’ Compensation rendered in favor of Rhonda Benjamin for attorney fees. In the alternative, should this court find that the award of attorney fees is correct, Wal-Mart asserts that the amount of attorney fees should be decreased. Ms. Benjamin answers the appeal and seeks an award of penalties due to Wal-Mart’s arbi *626 trary and capricious failure to authorize medical treatment and an increase in the award of attorney fees for work performed on this appeal and at the hearing. For the following reasons, we amend the judgment of the workers’ compensation judge to include an award for additional attorney fees for work done on appeal and further amend the judgment to include a penalty award of $2,000 for Wal-Mart’s failure to authorize chiropractic treatment.
I.

FACTS

Ms. Benjamin asserts that she was injured in the early morning (at approximately 2:00 a.m.) of February 28, 1998, while in the course and scope of her employment with Wal-Mart. While stocking items for sale, Ms. Benjamin slipped from a ladder and fell onto a cart, hitting her back. At trial, there was some question as to whether an accident occurred because it was unwitnessed; however, Wal-Mart does not appeal the finding that Ms. Benjamin suffered an on-the-job accident. Ms. Benjamin’s workers’ compensation benefit payments began soon after her accident, and were paid through August of 2000, when Wal-Mart decided to terminate payment of her workers’ compensation benefits some two and one-half years later.
J2II.

ISSUES

On appeal, Wal-Mart presents two issues for our consideration:
1) whether the trial court erred in finding it arbitrary and capricious for terminating Ms. Benjamin’s indemnity benefits; and,
2) whether the trial court’s award of attorney fees to Ms. Benjamin’s counsel should be decreased.
Ms. Benjamin also presents two issues for our consideration on appeal:
1) whether the trial court erred in failing to award penalties for Wal-Mart’s failure to authorize chiropractic medical treatment recommended by Ms. Benjamin’s treating physician and the state’s independent medical examiner (IME); and,
2) whether the attorney fees awarded by the trial court should be increased.
III.
LAW AND DISCUSSION Standard of Review
An appellate court may not set aside the factual findings of a workers’ compensation judge in the absence of manifest error or unless it is clearly wrong. Wackenhut Corrections Corp. v. Bradley, 96-796 (La.App. 3 Cir. 12/26/96); 685 So.2d 661. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. “[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, a reviewing |acourt may reverse a fact finder’s determinations if such factual findings aré not reasonably supported by the record and are clearly wrong. Stobart v. State through Dep’t Transp. and Dev., 617 So.2d 880 (La.1993).
Arbitrary and Capricious Termination of Indemnity Benefits
“Whether an insurer acted in an arbitrary or capricious manner is a determination of fact, which should not be disturbed by this Court on review absent *627 manifest error.” McCray v. Commercial Union Ins. Co., 618 So.2d 483, 489 (La.App. 4 Cir.1993). Wal-Mart asserts that its action in terminating Ms. Benjamin’s indemnity benefits was not arbitrary and capricious because it relied on information from witnesses that Ms. Benjamin committed workers’ compensation fraud. At trial, Wal Mart also questioned whether an accident occurred. Ms. Benjamin asserts that even if the testimony of the witnesses was true, it does not give rise to fraud pursuant to La.R.S. 23:1208. The workers’ compensation judge agreed with Ms. Benjamin’s position and concluded that Wal-Mart was unreasonable in relying on the testimony of the witnesses in making its decision to terminate Ms. Benjamin’s benefits. Wal-Mart argues that the workers’ compensation judge erred because, although the workers’ compensation judge chose to disbelieve Wal-Mart’s witnesses and to believe the conflicting testimony presented by Ms. Benjamin’s witnesses, its termination of Ms. Benjamin’s benefits was not arbitrary, capricious or without probable cause because the issue of whether Ms. Benjamin committed fraud was subject to reasonable dispute. We disagree.
After falling at Wal-Mart, Ms. Benjamin continued working her shift. Ms. Benjamin testified that she worked in pain. Ms. Benjamin went home and showed her back to her daughter and her step-mother. Subsequently, Ms. Benjamin | ¿went to the emergency room. The emergency room records reveal that Ms. Benjamin complained of pain to her right side and upper back due to a fall from a ladder onto a shopping cart. The records also reveal the existence of a small bruise under the right scapular area of her back. The workers’ compensation judge concluded that the medical record evidence was consistent with Ms. Benjamin’s description of her work-related accident and that Wal-Mart was unreasonable in its determination that an accident did not occur. We find no error in that conclusion.
As a result of her injury, Ms. Benjamin saw several doctors. Dr. Brodie was the first doctor to see Ms. Benjamin. Dr. Brodie’s diagnosis of Ms. Benjamin’s problem was thoracic contusion and strain. Later on, Ms. Benjamin began seeing Dr. Robert Rush, a family practitioner, who noted tightness in the suboccipital and rhomboidal muscle groups with multiple trigger points. Dr. Rush diagnosed trauma to Ms. Benjamin’s back and myofacial syndrome. At Wal-Mart’s request, Ms. Benjamin saw Dr. Mark Dodson, an orthopedist. Dr. Dodson diagnosed muscular strain of her back. In September of 1998, Dr. Dodson stated that he would see Ms. Benjamin for follow-up for her low-back pain; however, Ms. Benjamin’s original pain was located in her upper back area.
Dr. Dodson released Ms. Benjamin to return to work by September 22, 1998 to four hours per day at medium-level duty. Dr. Dodson noted that Ms. Benjamin was still tender. Ms. Benjamin had returned to work doing light duty work during this period of time. Ms. Benjamin also saw Dr. Louis Blanda, a neurosurgeon, in October of 1998, who found tenderness to palpation of the trapezius and mid-thoracic spine, the area of Ms. Benjamin’s back where she sustained injury, not her low back area focused upon by Dr. Dodson. During this time, Ms. Benjamin was working for Wal-Mart on SEB status. However, by December of 1998, due to Ms. |sBenjamin’s increased complaints of pain, Dr. Blanda determined that Ms. Benjamin could no longer work. At the same time she was seeing Dr. Blanda, Ms. Benjamin was also being treated by a chiropractor, Dr. Kart Gramlich. Dr. Blanda noted in February of 1999, that Ms. Ben *628 jamin’s spasms were palpable, that she had a positive Spurling’s test with decreased sensation in both arms. Dr. Blanda recommended that Ms. Benjamin undergo a cervical myelogram and a CT scan.
Wal-Mart sought a second opinion as to the need for these tests and sent Ms. Benjamin to see Dr. Dodson again. Dr. Dodson noted in March, 1999 that he was following up on Ms. Benjamin’s lower back injury. However, the trial court correctly noted in its reasons for judgment that Ms. Benjamin’s injury was to her upper back. Dr. Dodson’s examination in March 1999 noted tenderness in the trapezius area of Ms. Benjamin’s back. Dr. Dodson reviewed a November, .1998 MRI that revealed dissociation of the C5 through C6; however, he concluded that this did not account for her symptoms. The trial court correctly reasoned that Dr. Dodson’s conclusion was based on his concentration on Ms. Benjamin’s lower back as opposed to her upper back. Dr. Dodson ultimately concluded that Ms. Benjamin did not need additional therapy, chiropractic treatment, or a cervical myelogram.
Due to the discrepancy between Ms. Benjamin’s choice of doctor and Wal-Mart’s doctor, an independent medical examination was conducted by Dr. Vanda Davidson in August of 1999. Dr. Davidson agreed with Dr. Blanda and recommended that a cervical myelogram and CT scan be performed on Ms. Benjamin. Dr. Davidson’s examination and the results of the medical tests revealed minimal central disc bulge at C5-C6, evidence of a very small subligamentous disc protrusion with minor cord displacement but no cord compression.
| (¡Although Dr. Davidson, the independent medical examiner, testified in her deposition that Ms. Benjamin exhibited objective findings of pain by way of muscle spasms, Wal-Mart terminated Ms. Benjamin’s benefits on August 8, 2000, the same day it deposed Dr. Davidson. With the exception of Dr. Dodson, the doctor chosen by Wal-Mart to examine Ms. Benjamin, all of the doctors who saw Ms. Benjamin agreed that she was experiencing muscle spasm causing pain in her upper back.
Wal-Mart also presented the testimony of several witnesses who testified regarding Ms. Benjamin’s activities during the time she received workers’ compensation benefits. Most of these witnesses were either former or present employees who worked in the auto-tech area of the store. Collectively, the witnesses testified that Ms. Benjamin baked cakes for sale, worked in her garden, moved antique furniture, and went fishing for hours at a time on several occasions. Additionally, Mr. Michael Gorman testified that he lived with Ms. Benjamin for several weeks from September of 1998 through early November of 1998. Mr. Gorman further testified that during that time he and Ms. Benjamin organized, planned and prepared for a party at Ms. Benjamin’s house. He testified that Ms. Benjamin mowed her five acre lawn on a riding lawnmower, that she set up tables, chairs and a volleyball net, and that she cooked the food. Mr. Gorman also testified that she picked up tree limbs, and played volleyball and badminton during the party. The testimony of two other people who attended the party was similar to that of Mr. Gorman. Just prior to moving in with Ms. Benjamin, Mr. Gorman dated Ms. Vonnie South, then Ms. Benjamin’s supervisor at Wal Mart. Soon after leaving Ms. Benjamin’s home, Mr. Gorman and Ms. South resumed their relationship and eventually married.
[7Ms. Benjamin denied that she had done any of the activities described by Mr. Gor-man. Ms. Benjamin further testified that she did nothing in preparation for the par *629 ty and that during the party she stayed in the house. She further testified that her daughter’s fifteen-year-old brother-in-law helped set up for the party by mowing the grass, moving limbs, and setting up tables and chairs. Ms. Benjamin also testified that Mr. Gorman was drunk on the day of the party. Ms. Benjamin’s testimony was corroborated by her daughter. Ms. Benjamin testified that she observed her daughter’s brother-in-law and Mr. Gorman get into a fight while playing volleyball. Ms. Gorman’s daughter, Shawndrika, testified that her brother-in-law, Eric, and Mr. Gor-man fought because she and Eric’s volleyball team kept scoring points against Mr. Gorman’s team, which caused Mr. Gorman to become upset. She further testified that Mr. Gorman was drunk at the party. Ms. Benjamin, Shawndrika, and Ms. Erma Broussard, Ms. Benjamin’s mother, testified that Ms. Benjamin baked cakes for sale in the past when she was married and a homemaker; but, that she had not baked any cakes since early 1990. In fact, Mr. Gorman testified that he saw her bake one fancy cake, but did not know whether she sold the cake.
Mr. Thomas Bennett, a friend of Mr. Gorman who testified that Ms. Benjamin was playing volleyball and badminton, admitted that he never saw a fight although he was present at the party the entire time. He further testified that he did not remember either Eric or Shawndrika playing volleyball. Ms. Tonya Copeland testified similarly to the other Wal-Mart witnesses regarding Ms. Benjamin’s activities at the party. Interestingly; however, is the fact that Ms. Copeland is Mr. Gorman and Ms. South’s daughter-in-law.
Mr. Paul Anthony Landry testified on behalf of Wal-Mart regarding Ms. Benjamin’s cake-baking activity. Mr. Landry worked as a support manager for Wal-(Marts at the time of Ms. Benjamin’s injury. Mr. Landry testified that one night, during a break, he talked with Ms. Benjamin, and she told him she worked in the bakery. In fact, Ms. Benjamin never worked in the bakery. He further testified that she told him it was hard to work part-time and have a family. Mr. Landry testified that it was then that Ms. Benjamin informed him that she baked cakes to sell on the side. On cross-examination, Mr. Landry admitted that he did not remember the time of year or the year in which he had this conversation with Ms. Benjamin. He also admitted that he only had one conversation with Ms. Benjamin. Mr. Landry found out that Ms. Benjamin was receiving workers’ compensation benefits at a loss prevention meeting he attended as a member of Wal-Mart’s loss prevention team. Mr. Landry, thinking Ms. Benjamin worked in the bakery department, felt that there was a conflict of interest if Ms. Benjamin was baking and selling cakes on the side. Mr. Landry testified that he told the Wal-Mart store manager about his conversation with Ms. Benjamin the week after he talked with her during the regularly scheduled loss prevention meeting. Thus, Wal-Mart had this information prior to August 2000. Further, the other Wal-Mart employees who testified regarding Ms. Benjamin’s activities, testified about events that occurred in 1998. Moreover, the activities of Ms. Benjamin testified to by Mr. Gorman and other former and present Wal-Mart employees occurred during the time that Ms. Benjamin had been released by her doctors, to medium level work.
When an employer reasonably controverts the claimant’s right to workers’ compensation benefits, attorney fees shall be denied. Olson v. Insurance Company of State of Pa., 471 So.2d 1151 (La.App. 3 Cir.), writ denied, 476 So.2d 352 (La.1985). “Arbitrary and capricious be *630 havior consists of willful and unreasoning action, without consideration and regard for facts and circumstances 19presented, or of seemingly unfounded motivation.” Norris v. KAW Transport, Inc., 99-776, p. 4 (La.App. 3 Cir. 11/3/99); 746 So.2d 242, 245 (quoting Brown v. Texas-LA Cartage, Inc., 98-1063, p. 8 (La.12/1/98)); 721 So.2d 885, 890. The workers’ compensation judge found that Wal-Mart was not reasonable in its belief that Ms. Benjamin committed fraud to obtain and/or continue benefits. Two of Ms. Benjamin’s doctors testified to objective signs of upper back injury. One of the two doctors was Dr. Davidson, the state appointed IME. The only doctor who failed to find that Ms. Benjamin continued to suffer pain was Dr. Dodson, the doctor chosen by Wal-Mart to treat Ms. Benjamin. Moreover, Dr. Dodson’s opinion that Ms. Benjamin was no longer injured was based on his examination of her lower back; when, from the beginning, it was Ms. Benjamin’s upper back that was injured. We find this case is not one in which there is a closely disputed factual issue. Rather, this case is one in which Wal-Mart failed to adequately investigate the claim, and in which the denial of the claim for medicals was not based on an articulable and objective reason but on a conclusion made without considering the facts, circumstances and biases of the witnesses presented. Therefore, we find no manifest error in the trial court’s finding that Wal-Mart failed to reasonably controvert Ms. Benjamin’s entitlement to workers compensation benefits, and the workers’ compensation judge was correct in awarding attorney fees.
Penalties
The workers’ compensation judge did not award Ms. Benjamin penalties against Wal-Mart. The workers’ compensation judge stated in oral reasons for judgment, that Ms. Benjamin was not entitled to penalties because her accident happened after 1995 and her claim fell under La.R.S. 23:1201.1 that provides for the [inaward of only attorney fees when benefits are terminated arbitrarily and capriciously. We disagree with the workers’ compensation judge’s finding that only La.R.S. 23:1201.1 is involved in this case. Louisiana Revised Statutes 23:1201(E) and (F) provide as follows:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all ... medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
Both Dr. Blanda, Ms. Benjamin’s treating physician, and Dr. Davidson, the state appointed IME, testified that Ms. Benjamin should receive chiropractic treatment. Wal-Mart’s doctor, Dr. Dob-son, disagreed based on his examination of Ms. Benjamin’s lower back. Wal-Mart did not authorize and failed to pay for Ms. Benjamin’s chiropractic treatment. Louisiana Revised Statutes 23:1201(F)(2) states: “[tjhis subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” It appears that Wal-Mart argues it reasonably controverted Ms. Benjamin’s claim for authorization of chiropractic treatment because its doctor found that *631 she did not need that type of medical treatment. However, in early 1999, Dr. Dobson based his opinion on his examination of Ms. Benjamin’s lower back, which was not the area of Ms. Benjamin’s work-related injury. Drs. Blanda, Ms. Benjamin’s treating physician and Davidson, the state’s IME after examining Ms. Benjamin’s upper back, Inand noting objective signs of injury, concluded that Ms. Benjamin should be treated by a chiropractor. As late as August 8, 2000, the date Ms. Benjamin’s benefits were terminated, Dr. Davidson testified by deposition that she observed objective findings of muscle spasms in Ms. Benjamin’s upper back. Thus; we find that Wal-Mart did not reasonably controvert Ms. Benjamin’s need for chiropractic treatment of her back problems, and award the amount of $2,000 as a penalty for Wal-Mart’s failure to authorize medical treatment.
Amount of Attorney Fees
Ms. Benjamin, in her answer to Wal-Mart’s appeal, suggests that the workers’ compensation judge erred in awarding only $11,000 in attorney fees and requests that we assess additional attorney fees for services rendéred in association with this appeal. According to Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981), factors used in determining attorney’s fees in workers’ compensation cases are the degree of skill and ability exercised, the amount of the claim and the amount of time devoted to the case. Considering the efforts of Ms. Benjamin’s attorney, we find no error in the workers’ compensation judge’s $11,000 award for attorney fees. It is clear from the record that the attorney spent a considerable amount of time pursuing his client’s case and vigorously enforcing her rights against Wal-Mart’s unreasonable claims of fraud at the trial level. On appeal, even though Wal-Mart did not appeal the workers’ compensation judge’s finding that Ms. Benjamin was disabled and entitled to workers’ compensation benefits, Ms. Benjamin’s attorney had to address each and every allegation of fraud by brief and oral argument. Thus, we find that Ms. Benjamin is entitled to additional attorney fees in connection with the thorough brief l^filed and oral argument made on appeal. Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3 Cir.1989).
In Jones v. Universal Fabricators, 99-1370 pp. 10-11 (La.App. 3 Cir. 2/9/00); 758 So.2d 856, 862-63, writ denied, 00-0742 (La.5/12/00); 762 So.2d 13 this court noted:
We emphasize that adequate attorney’s fees in workers’ compensation cases is the basis for an injured employee obtaining effective counsel. La.R.S. 23:1221, which authorizes attorney’s fees, encourages the retention of effective counsel by an employee who is injured, unemployed and unable to pay for capable representation.
It is evident that an employee in workers’ compensation cases by definition is placed in a disadvantageous position. The employee is injured, unemployed and often totally lacking in financial resources. In contrast, the employer has the financial means to obtain attorneys to prepare and argue its case. The primary purpose of workers’ compensation is to protect injured employees from impoverishment. If an employee is arbitrarily deprived of benefits, the attorney who litigates on his behalf and is successful at showing arbitrary and capricious conduct on the part of the employer, has aided not only his client but also the administration of the workers’ compensation system. This work is very important as it helps discourage others who might seek to further their own economic fortune at the expense of *632 persons injured in their employ. Considering these goals of workers’ compensation, we find that an increase in attorney’s fees is warranted.
For the efforts by Ms. Benjamin’s attorney, we award $4,000 for the work done on appeal.
IV.

CONCLUSION

For the foregoing reasons, we affirm the Office of Workers’ Compensation’s award of disability benefits and chiropractic services. We amend the | ^judgment to award a penalty in the amount of the statutory maximum of $2,000 for Wal-Mart’s failure to authorize the chiropractic care of Dr. Gramlich. We award attorney fees in the amount of $4,000 for work rendered in this appeal.
We assess all costs of this appeal to the defendant, Wal-Mart.
AMENDED AND, AS AMENDED, AFFIRMED.