646 So.2d 455 (1994)
Joseph S. CARTER
v.
NEW ORLEANS FIRE DEPARTMENT and City of New Orleans.
No. 94-CA-0338.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1994.
Rehearing Denied December 13, 1994.
Writ Granted February 17, 1995.
*457 Joseph G. Albe, New Orleans, for plaintiff.
Kathy L. Torregano, City Atty., Milton Osborne, Jr., Deputy City Atty., Bruce E. Naccari, Acting First Asst. City Atty., and Al Sarrat, Asst. City Atty., New Orleans, for defendant.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This is an appeal by the defendant, the City of New Orleans, in a worker's compensation case. The hearing officer awarded the plaintiff, Joseph Carter, a New Orleans fireman, supplemental earnings benefits and medical expenses and also attorney's fees and penalties for arbitrary and capricious denial of worker's compensation, as well as legal interest and costs. The City argues that, as Mr. Carter retired on a disability pension, he is limited to 104 weeks of Supplemental Earnings Benefits pursuant to La. R.S. 23:1221(3)(d)(iii). We agree with the City as to that legal issue and modify the judgment below to limit the SEB award to 104 weeks. The City raises a number of other issues, almost all of them factual, but we find no reversible error as to them.
Mr. Carter was employed as a District Chief fireman and had been a New Orleans fireman for more than twenty years. From 1970 to 1990 he suffered ten on-the-job back injuries. He was being treated by an orthopedist, Dr. Ruel, for back problems in 1991. Dr. Ruel concluded that Mr. Carter suffered from "degenerative disc disease" in that his back problems were to some extent just a natural process but that his back problems also were caused by his repeated on-the-job back injuries. With medication, Mr. Carter was able to keep his back problems under control to the point where he could continue to work.
On December 1, 1991, while Mr. Carter was at the scene of a fire, he suffered a fall. Mr. Carter testified that he was descending a wet flight of stairs, and in the process of removing a cumbersome self-contained breathing apparatus, when he slipped and fell onto his back. There were no eyewitnesses to the fall itself but Chief Gratia of the New Orleans Fire Department saw Mr. Carter lying on the ground by the wet stairs and heard Mr. Carter say that he had hurt himself.
The next day, Mr. Carter went to see Dr. Keppel, an orthopedic physician, practicing with Dr. Ruel (who was out-of-town). Dr. Keppel told Mr. Carter not to go back to work. Mr. Carter saw Dr. Ruel on a number of subsequent occasions and Dr. Ruel also told Mr. Carter not to go back to work. The City paid Mr. Carter temporary total disability benefits for six months but then cut off all worker's compensation benefits on the purported ground that worker's compensation does not cover degenerative disc disease. It was the City's position that Mr. Carter had back problems that simply had become worse and, therefore, Mr. Carter's disability arose from degenerative disc disease rather than a disabling on-the-job injury.
Mr. Carter testified that he had suffered from pain and stiffness prior to his December 1, 1991 fall but that, since that fall, the pain and stiffness had increased markedly. *458 Mr. Carter also testified as to activities, such as lifting, which he could do prior to the fall but could not do after the fall. Mr. Carter also testified that the pain from his ten previous on-the-job back injuries had always dissipated or gone away after some time but that, following the December 1, 1991 fall, the pain had not gone away.
Mr. Carter and Chief Gratia both described the work of a District Chief as involving bending, lifting heavy weights, climbing, crawling and getting in awkward positions. Mr. Carter testified that, after the December 1, 1991 fall, he was no longer limber, and it is readily apparent from his testimony as to his post-December 1, 1991 physical condition that it would be impossible for him to perform the work of a fireman. For example, Mr. Carter vividly described an occasion on which he was almost completely unable to step through a hole in a fence.
Dr. Ruel testified by deposition. He has treated Mr. Carter for back problems for a considerable time both before and after the December 1, 1991 fall. He explained that the combination of Mr. Carter's earlier ten on-the-job accidents and degenerative disc disease had caused Mr. Carter to suffer from back problems prior to the December 1, 1991 fall but that, with medication, Mr. Carter's back problems were controlled to the point that Mr. Carter could keep working. Dr. Ruel testified that the December 1, 1991 accident was "the straw that broke the camel's back." Dr. Ruel explained that the December 1, 1991 fall aggravated the pre-existing back problems to the point that Mr. Carter could no longer work. In particular, Dr. Ruel testified as to the December 1, 1991 fall that: "It's the reason he is not working today." Dr. Ruel also testified that Mr. Carter has "reached maximum medical recovery" so that he will not get any better and that he will have episodes when he will be worse.
Dr. Ruel has placed many restrictions on Mr. Carter's physical activity and he testified that Mr. Carter will have to be subject to those restrictions for the rest of his life in order to protect his spine as much as possible. Those restrictions include avoiding any unnecessary lifting and any lifting of over 50 pounds; avoiding prolonged sitting; avoiding prolonged standing; and avoiding unnecessary bending, climbing, pulling, pushing or anything else that might stress Mr. Carter's lower back. Dr. Ruel testified that, not only may Mr. Carter not return to work as a fireman, but, he also may not work at a sedentary job because prolonged sitting would aggravate his back. In fact, Dr. Ruel testified that Mr. Carter would have back aggravation problems from performing any job. There were medical reports from Dr. Keppel and Dr. Ruli and their reports were consistent with Dr. Ruel's testimony although they were not nearly as extensive or detailed as Dr. Ruel's testimony.
The City first argues that Mr. Carter did not prove that he suffered an "accident" as the term "accident" is defined in the worker's compensation statute. The statute defines accident as follows:
"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a progressive deterioration or progressive degeneration.
La.R.S. 23:1021(1).
Initially, the City appears to question whether Mr. Carter even fell on December 1, 1991. Mr. Carter testified that he fell and, as the hearing officer noted, Mr. Carter's testimony was identical to the medical history he gave to Dr. Keppel, Dr. Ruel and other doctors. Also, Chief Gratia corroborated Mr. Carter's testimony to some extent because he saw Mr. Carter lying on the ground by the wet stairs. The hearing officer believed Mr. Carter's testimony and that credibility determination must be accepted because it is not "clearly wrong" or "manifestly erroneous." Freeman v. Poulan/Weed Eater, 630 So.2d 733, 737-38 (La.1994) ("clearly wrong/manifest error" standard of factual review applies in worker's compensation cases). In fact, the City has shown no substantial reason to doubt that Mr. Carter fell on December 1, 1991.
The City also argues that Mr. Carter's fall does not meet the statutory definition of *459 "accident" because Mr. Carter had back problems before the December 1, 1991 fall and he simply had worse back problems after the fall. The City is obviously focusing on the final clause of La.R.S. 23:1021(1) which states that the accident must cause "an injury which is more than simply a progressive deterioration or progressive degeneration."
The City argues that "progressive" means "increasing in severity or extent" and we do not doubt that, as far as it goes, the City's interpretation of the word "progressive" is sound. However, we believe that La.R.S. 23:1021(1) must be read as a whole and that, in particular, the word "progressive" must be read in the context of the whole of La.R.S. 23:1021(1). The statute's emphasis on the occurrence of an "event" which is "precipitous" and which happens "suddenly or violently" and which event is "actual" and "identifiable" is instructive as to the meaning of the word "progressive" in the statute. Specifically, when the word "progressive" is read in the context of La.R.S. 23:1021(1) as a whole, it includes, not every increase in severity or extent of injury, but only those increases in extent or severity of injury which occur gradually over a period of time as opposed to increases in severity or extent which occur suddenly and to a marked degree. Mr. Carter's fall not only fits comfortably within the statutory language requiring "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently" it also immediately produced a marked change for the worse in Mr. Carter's physical condition. In fact, immediately prior to the fall, Mr. Carter could and did work and, immediately after the fall, he was disabled. The City cites Rubin v. PPG Industries, Inc., 527 So.2d 1 (La. App.3rd Cir.), writ denied, 528 So.2d 155 (La.1988), but that case is not on point because the Rubin court pointed out that the Rubin "plaintiff can point to no specific event or occurrence which caused or aggravated his [back] condition." 527 So.2d at 2. The fall in the present case readily distinguishes the present case from Rubin.
Closely on point is our decision Blanque v. City of New Orleans, 612 So.2d 948 (La.App. 4th Cir.1993). In Blanque, a New Orleans policeman had suffered numerous back injuries but had responded well enough to treatment to return to work. However, after returning to work, he suffered yet another back injury. The new back injury exacerbated the Blanque claimant's back problems to the point that he was disabled for some time. We held that, because the new back injury disabled the Blanque claimant, he was entitled to worker's compensation benefits and it made no difference that he already suffered from back problems before the new back injury. "A pre-existing injury does not bar a claimant's recovery.... A claimant must, however, establish the aggravation of the pre-existing condition by a preponderance of the evidence.... Additionally, a plaintiff's uncontradicted testimony will be accepted as true absent a sound reason for its rejection." 612 So.2d at 951 (citations deleted).
As with the Blanque claimant, Mr. Carter's pre-existing injury does not bar his recovery so long as he proved by a preponderance of the evidence that the December 1, 1991 fall aggravated his pre-existing condition. Mr. Carter's uncontradicted testimony, and the uncontradicted testimony of Dr. Ruel, which are each described above, establish by a preponderance of the evidence that Mr. Carter's pre-existing back problems were markedly aggravated by the December 1, 1991 fall. Also, the aggravation issue is a factual matter and the hearing officer's determination that Mr. Carter's fall aggravated his pre-existing back problems is obviously not "clearly wrong" or "manifestly erroneous." Freeman v. Poulan/Weed Eater, 630 So.2d 733, 737-38 (La.1994).
The City next argues that Mr. Carter failed to prove that he meets the requirements for Supplemental Earnings Benefits ("SEB"). The statute provides that, if an injury results in an employee's inability to earn at least 90% of the wages earned at the time of injury, then the employee is entitled to SEB. La.R.S. 23:1221(3). Generally speaking, the amount of SEB benefits is determined as a percentage of the difference between the wages earned at the time of the injury and the wages the employee is able to earn after the injury. Id.
*460 The City contends that Mr. Carter has the burden of proof as to SEB. Mr. Carter responds that the City has the burden of proof as to SEB. The City and Mr. Carter are each partially correct. Mr. Carter has the burden of proving that he is entitled to SEB at alli.e. that he is not able to earn at least 90% of the wages he earned at the time of his injury. Daigle v. Sherwin Williams Co., 545 So.2d 1005 (La.1989); Allen v. City of Shreveport, 618 So.2d 386 (La. 1993); Peveto v. WHC Contractors, 630 So.2d 689, 692-93 (La.1993). However, once Mr. Carter has shown that he is unable to earn at least 90% of the wages he earned at the time of his injury, the burden of proof shifts to the City to show the amount of benefits to which Mr. Carter is entitledi.e. the City must prove the amount of wages Mr. Carter is able to earn after his injury. Daigle, supra; Allen, supra; Peveto, supra. If the City fails to prove any amount that Mr. Carter is able to earn after his injury, then the SEB is calculated as a percentage of the difference between the wages earned at the time of injury and zero. Cousins v. City of New Orleans, 580 So.2d 536, 539-41 (La.1991), on remand on other grounds, 594 So.2d 1107 (La.App. 4th Cir.1992), reversed and remanded on other grounds, 608 So.2d 978 (La.1992).
The hearing officer, who determined that Mr. Carter is entitled to SEB, necessarily found that Mr. Carter is not able to earn at least 90% of the wages he earned at the time of his fall. This finding of fact is supported by the record. Mr. Carter had reached the senior position of District Chief of the New Orleans Fire Department and, thus, earned a fairly high wage. Specifically, Mr. Carter earned about $16.26 per hour and worked an average of fifty-six hours per week for an average weekly wage of $910.56. Mr. Carter's own testimony as to his physical condition, as well as his lack of higher or specialized training outside the firefighting field, shows it to be unlikely that he would be able to earn at least 90% of his previous high wages. More importantly, the restrictions that Dr. Ruel has placed on Mr. Carter's physical activity make it unlikely that he can work at all at almost any job. In fact, Dr. Ruel testified that working at any job would aggravate Mr. Carter's back problems. Thus, it seems most improbable that Mr. Carter can attain the high wages he earned at the time of his injury. Consequently, we certainly cannot say that the hearing officer was "clearly wrong" or committed "manifest error" in finding Mr. Carter entitled to SEB. Freeman v. Poulan/Weed Eater, 630 So.2d 733, 737-38 (La.1994).
Because Mr. Carter met his burden of proof that he is entitled to SEB, the burden shifted to the City to prove the amount of SEBi.e. the amount Mr. Carter is able to earn since his injury. The City put on no evidence at all as to this point so it is assumed that Mr. Carter is not able to earn any amount at all since his injury. Cousins v. City of New Orleans, 580 So.2d at 539-41.[1]
The City further argues that Mr. Carter "retired" after his injury, and received a disability pension, and, therefore, his entitlement to SEB is limited to 104 weeks per La.R.S. 23:1221(3)(d)(iii) instead of the general limit of 520 weeks per La.R.S. 23:1221(3)(d). See generally Allen v. City Shreveport, 637 So.2d 123 (La.1994) (meaning of "retire" in La.R.S. 23:1221(3)(d)(iii)). Mr. Carter himself testified that he has retired from the Fire Department on a disability pension which pays him 90% of what a regular pension would pay. As Mr. Carter has retired, he is limited to 104 weeks of SEB.
Finally, the City argues that it was not arbitrary or capricious when it cut off Mr. Carter's worker's compensation benefits and, therefore, it should not have been subject to a 12% statutory penalty and attorney's fees per La.R.S. 23:1142, 1201 and 1201.2. "Whether an insurer acted in an arbitrary or capricious manner is a determination of fact, which should not be disturbed by the Court on review absent manifest error." McCray v. Commercial Union Ins. Co., 618 So.2d 483, 489 (La.App. 4th Cir. 1993).
*461 It is uncontested, or at least obvious from the testimony of Ms. Clements, who handled Mr. Carter's claim for the City, that the City's only reason for cutting off Mr. Carter's compensation benefits was the City's belief that Mr. Carter was disabled by "degenerative disc disease" and that such an ailment is not covered by worker's compensation. There were medical reports that stated Mr. Carter suffered from degenerative disc disease but it was quite obvious from the totality of the medical evidence available that Mr. Carter's disability, i.e. his inability to work, arose from the December 1, 1991 fall. An investigation and evaluation of the medical evidence should have made clear that the City's position was untenable.
Employers, however, must demonstrate that reasonable efforts were made to medically ascertain the worker's exact condition before denying benefits.... An Employer has an ongoing duty to review medical reports concerning an injured employee's disability, and may not deny or discontinue compensation based on inconclusive medical reports.
Blanque v. City of New Orleans, 612 So.2d 948, 952 (La.App. 4th Cir.1993). It is apparent that the City did not meet the Blanque standard. In any event, we cannot say that the hearing officer was "clearly wrong" or "manifestly erroneous" in finding the City to have acted arbitrarily and capriciously.
In his brief on appeal, Mr. Carter requests additional attorney's fees for the work of his attorney in opposing the city's appeal. However, Mr. Carter did not file an answer to the City's appeal. When an appellee has not filed an answer to the appellant's appeal, we are not able to award to the appellee additional attorney's fees for defending against the appeal. Scott v. Central Industries, Inc., 602 So.2d 201 (La.App. 3rd Cir.1992); Culotta v. Great Atlantic and Pacific Tea Co., 524 So.2d 259 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (La.1988); Wellborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La.App. 2d Cir.1987); Celestine v. Fireman's Fund Ins. Co., 430 So.2d 1263 (La.App. 1st Cir.1983). The answer to an appeal must be filed in accordance with article 2133 of the Code of Civil Procedure. "A brief submitted by appellee does not satisfy the requirements of La.C.C.P. 2133." Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051, 1052-53 (La.App. 4th Cir. 1989). Accord, Tyler v. Gray Ins. Co., 599 So.2d 428, 430 (La.App. 4th Cir.1992).
For the foregoing reasons, the judgment below is modified to limit SEB benefits to 104 weeks and is otherwise affirmed.
MODIFIED AND AFFIRMED
NOTES
[1] The City's brief argues that Mr. Carter is not entitled to permanent or temporary total disability benefits, La.R.S. 23:1221(1) and (2), but the hearing officer awarded neither permanent nor temporary total disability benefits, so they are not at issue.