665 So.2d 1293 (1995)
William MILLER
v.
The CITY OF NEW ORLEANS.
No. 95-CA-1005.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1995.
*1294 Thomas A. Gennusa, II, Jack P. Ruli, Jr., Metairie, for Plaintiff/Appellee.
Neil J. Kohlman, Assistant City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Defendant/Appellant.
Before BARRY, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
On 14 April 1992, William R. Miller, Jr., a District Chief of the New Orleans Fire Department (NOFD), filed a claim against the City of New Orleans (City) for workers' compensation benefits arising out of injuries sustained on 19 October 1991 when he slipped on a stairway while responding to a fire alarm. Chief Miller claimed that on 2 January 1992, the City, through New Orleans Rosenbush Claim Service (Rosenbush) discontinued benefits, based upon a medical report it contended indicated Chief Miller could return to work in a supervisory position. On 8 January 1992, Chief Miller's immediate supervisor, NOFD Deputy Chief William Carrouche advised Rosenbush by fax transmission that Chief Miller's duties as a district fire chief included vigorous and manual work. *1295 By letters dated 7 January 1992 and 9 January 1992 Rosenbush again denied benefits, taking the position that Chief Miller's occupational disease was excluded from compensation coverage by La.R.S. 23:1031.1(B). Chief Miller claims that Rosenbush, on behalf of the City, acted arbitrarily and capriciously in terminating his benefits.
Following a hearing on 13 October 1993 before a Hearing Officer of the Office of Workers' Compensation, judgment was rendered holding that Chief Miller suffered a compensable injury on 19 October 1991 and is entitled to full indemnity of $295 weekly under supplemental earnings benefits from 1 February 1992. Defendant was held liable for the outstanding medical expenses of Dr. Robert Ruel from February 1992, and for Chief Miller's mileage expenses, and for any other outstanding medical expenses incurred as a result of the work-related injury. The Hearing Officer, finding that the City acted in an arbitrary and capricious manner, awarded Chief Miller $5,000 in attorney fees and a 12% penalty on all unpaid indemnity. The Hearing Officer also assessed costs, including the expenses of Dr. Ruel's deposition, against the City. From this judgment the City appeals.
Chief Miller answered the appeal, seeking attorney's fees and penalties for having to defend a frivolous appeal. We affirm and grant Chief Miller's request for attorney's fees and costs.

STATEMENT OF FACTS
Chief Miller testified that he had worked for the NOFD since 1961. At the time of his accident, he was a district chief. As such, he had to respond to fires and, at times, to fight fires. When at the fire site, he would wear a turn-out uniform weighing 70 to 80 pounds and consisting of boots past the hip, a jacket, helmet and, at times, an air pack similar to what a SCUBA diver would wear. In the course of his duties he was required at times to climb ladders, rescue people, pull fire hoses and direct men.
On Saturday, 19 October 1991, at about 7 p.m., he responded to an alarm at Live Oak school. At that time, he was medically fit to work. The building was being used as a polling place that day, and he knew people would be there. He went to the upper floor where he met Captain Omer Abram and a crew that had arrived earlier. They investigated the scene, found no source of fire, and determined it was a false alarm. Chief Miller testified that he turned off the alarm at the main switch, was unable to reset the alarm, and explained to Abram that an engine company would have to remain on the scene until proper authority arrived to reset the alarm system. As he and Abram descended the poorly lit stairway, Abram walked in front, holding a hand light. Chief Miller testified that he slipped or missed a step and dove over to try to grab the rail to help prevent his fall. At that time, he felt discomfort in his back, and his feet came out from underneath him. He continued downstairs, the pain became worse and he advised Abram that his back hurt and he might fill out an NOFD injury report. Chief Miller made his NOFD accident report and underwent urine and blood tests that showed he was not under the influence of drugs or alcohol. Abram's testimony corroborated Chief Miller's evidence. Abram testified that he heard a sound behind him as if someone had fallen and saw Chief Miller holding onto the railing and trying to get up. Shortly thereafter, Chief Miller told him his back was hurt and he was going back to quarters. Abram said that Chief Miller had not complained to him of back pain prior to this accident.
One or two days later, Chief Miller saw Dr. Ruel, who ran tests and started physical therapy on a three days per week schedule. Prior to the accident, Chief Miller was not taking any physical therapy. Chief Miller testified that although he had suffered previous accidents at work and hurt his back perhaps twice, he had been able to return to work, and was released by his doctors as fit for duty. He was never released as fit for duty following the 19 October 1991 accident.
Dr. Ruel, a board certified orthopaedic surgeon, testified by deposition that he treated Chief Miller on 13 March 1990 for a back injury, and treated him with an anti-inflammatory drug and physical therapy until July, 1990, when he released him back to work as a fireman. For the following two years, Dr. *1296 Ruel treated him for various on-the-job injuries, and, after each injury, Chief Miller was able to return to work as a fire fighter. The degenerative condition in his spine did not prevent him from returning to work.
Chief Miller testified that he has not been able to do any other work since his accident.[1] On cross-examination, Chief Miller testified that he did not intend to retire at the time of his accident and that he "loved [his] job."
NOFD paid him $295 weekly disability benefits based on his average weekly wage of $865.50. He was paid a lump sum for 500 days of accumulated, unused sick leave and between 90 and 100 days of annual leave.
According to Bernard V. Nicolay, Secretary-Treasurer of the Board of Trustees of the Fire Fighter's Pension and Relief Fund for the City of New Orleans, Chief Miller was an active participant in the Fund, served 30 years and earned full benefits (80% of maximum) being fully vested. Chief Miller became disabled because of injury in the line of duty and opted to retire under the duty disability section effective 31 December 1991. He receives the same amount of benefits whether he retired under the disability section or under the Regular Retirement section. He chose the duty disability pension because a portion of those benefits are exempt from income taxation. He also could have transferred at any time from the Old Plan into the New Plan.
Chief Miller testified to constant pain and is still being treated by Dr. Ruel. Round trip mileage to Dr. Ruel from Chief Miller's home is 42 miles. Since the accident, Chief Miller has made 53 office visits to Dr. Ruel. On 22 October 1991, he examined Chief Miller in connection with the accident of 19 October. According to the medical history, Chief Miller was descending stairs while working as a fireman when he slipped, grabbed onto the handrail in an attempt to catch himself and, in the process, twisted his back. Dr. Ruel gave the opinion that Chief Miller wrenched his back and sprained his ligaments and muscles, resulting in permanent chronic back sprain syndrome. In Dr. Ruel's opinion, the injury was superimposed on a degenerative condition in his low back in addition to multiple previous low back injuries; this accident actually was the determining factor that ended his career as a fireman. He referred to the 19 October injury as the straw that broke the camel's back.
Richard X. Patin, the representative of New Orleans Rosenbush claim service, verified that his office paid Chief Miller workers' compensation benefits from October 1991 until 11 January 1992. Patin testified that benefits were terminated based on Dr. John R. Montz's report dated 18 December 1991 and as a result of Chief Miller's overall medical history. Dr. Montz' report concluded that Chief Miller could work in a supervisory position if he did not do any repetitive bending, lifting or climbing. Dr. Montz did not anticipate long term permanent impairment, and agreed with Dr. Ruel's plan of conservative treatment. Dr. Montz' exam showed pain on forward flexion of 50 degrees and upon extension and lateral bending. He found no significant spasm, motor weakness, abnormal sensation or pathologic reflexes. X-rays taken 22 October 91 showed large anterior spurs at L2 and L3 and normal disc spaces. His impression was of degenerative lumbar disc with underlying lumbar spondylosis.
Patin testified that his office decided that the injury was not covered and so advised Chief Miller by letter of 7 January 1992, setting 1 February 1992 as the benefits cutoff date. The next day, his office received a fax from Chief Deputy Carrouche outlining the nature of Chief Miller's job and its physical demands. Rosenbush sent Chief Miller another letter on 9 January declining coverage based on the occupational disease exclusion. Patin admitted that Chief Miller was not offered rehabilitation or further training to enable him to earn support.
*1297 Patin testified that his office made medical payments totalling $1,588.82.
Dr. Montz testified at the hearing that Chief Miller's physical disability was related to his pre-existing back problems and even had the October 1991 injury not occurred, he would have recommended that Chief Miller be limited to supervisory work. This conclusion is not found in Dr. Montz' report to the City and Rosenbush.
In his oral reasons for judgment, the Hearing Officer found that an identifiable event took place and that a compensable accident occurred. He found that Chief Miller is not totally and permanently disabled, that at present he qualifies for supplemental earnings benefits (SEB); however, the defendant has done nothing at all toward Chief Miller's rehabilitation, and he is entitled to the maximum rate of $295 per week, citing Hebert v. Grey Wolf Drilling Co., Inc., 611 So.2d 674 (La.App.3rd Cir.1992). The Hearing Officer found that Dr. Montz' report, upon which defendant relied in terminating Chief Miller's benefits, restricts his duties and agrees with Dr. Ruel's treatment. Defendant was also in possession of Dr. Ruel's report which supports a finding of compensable injury. The court noted that Dr. Montz' testimony at the hearing to the effect that he would have restricted Miller to supervisory work even had he not been injured in October 1991 was the first time such an opinion was before the court or, according to the record, before the defendant. The court found that there was no basis in the information available to the defendant at the time it terminated benefits to support the termination, and, therefore, that defendant had acted in an arbitrary and capricious manner. The court awarded attorneys' fees of $5,000 together with a 12% penalty on unpaid compensation. The court awarded an expert fee of $500 for Dr. Ruel, and a mileage allowance of 24 cents per mile for each of Chief Miller's fifty-three visits to Dr. Ruel.

FIRST ASSIGNMENT OF ERROR: The hearing officer erred in finding that any continuing disability is related to a compensable accident under workers' compensation law.
In a workers' compensation case, the appellate court's review is governed by the manifest error or clearly wrong standard; a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. This Court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 737-38.
The testimony of Chief Miller, his supervisor, Omer Abram, and Dr. Ruel supports the hearing officer's conclusion that on 19 October 1991, Chief Miller suffered a career-ending injury in the course and scope of his employment as a fire fighter. The plaintiff's uncontradicted testimony should be accepted as true absent a sound reason for its rejection. Blanque v. City of New Orleans, 612 So.2d 948 (La.App. 4th Cir.1993). Chief Miller testified without contradiction that his previous injuries had not disabled him from eventually returning to work. Dr. Ruel's testimony is to the same effect. The supervisor testified that Chief Miller had not complained to him of back pain prior to the accident. We find no manifest error in the hearing officer's conclusion that Chief Miller suffered a compensable injury. Like the plaintiff in Blanque, Chief Miller suffered an accidental injury that served to aggravate or exacerbate a previously existing work-related back condition.
This assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR: The hearing officer clearly erred in finding that claimant had met his burden in proving an entitlement to supplemental earnings benefits.
The hearing officer awarded maximum supplemental earnings benefits. In order to establish entitlement to these benefits, a claimant must show that because of his injury, he is no longer able to earn wages equal to 90% or more of the wages earned prior to the injury. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4th Cir.1993). Chief Miller testified that he attended one year of high school, and worked for about a year as a stock clerk at a grocery *1298 store. He then spent four years in the United States Navy from 1956 to 1960, and received a G.E.D. diploma. After his honorable discharge from the Navy, he worked for a year for a roofing company. For the next 30 years, he worked for the NOFD. He testified that he earned about $4000 a year from a sideline chimney sweep service, which has not been profitable since his accident.
Having made a prima facie case of entitlement to SEB benefits, the burden shifts to the City to show the amount of benefits to which he is entitled: that is, the City must prove the amount of wages Chief Miller is able to earn after his injury. Carter v. New Orleans Fire Dept., 94-0338 (La.App. 4 Cir. 11/17/94), 646 So.2d 455, 460, writ granted and remanded on other grounds 94-3072 (La. 2/17/95), 650 So.2d 238. The City offered no evidence of post-injury earning capacity. It introduced no economic evidence that a person with Miller's particular disability is able to perform a particular remunerative job and that jobs for which he is suited are available. The Hearing Officer who determined that Chief Miller is entitled to SEB necessarily found that he is not able to earn at least 90% of the wages he earned at the time of his fall. This finding of fact is supported by the record. He earned an average weekly wage of $865.50 as a deputy chief. His uncontroverted testimony concerning his physical condition, his lack of formal education or experience in any other occupation and the restrictions Dr. Ruel placed on his activities make it more likely than not that he cannot earn an annual salary of at least $40,504.40. Because Chief Miller met his burden of proving his entitlement to SEB, and because the City introduced no evidence of his earning capacity, we may assume that Miller is unable to earn any income since his injury. Id. We certainly cannot say that the hearing officer was clearly wrong or committed manifest error in finding Chief Miller to be entitled to SEB. See, Carter, 646 So.2d at 460; and Cousins v. City of New Orleans, 580 So.2d 536, 539-40 (La.App. 4th Cir.1991); writ granted and remanded on other grounds 584 So.2d 1145 (La.1991). This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR: The hearing officer erred in failing to give defendant a credit for money received by claimant by using accumulated annual and sick leave.
The Supreme Court held that the La.R.S. 23:1225(C) credit constitutes a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. Cousins v. City of New Orleans, 608 So.2d 978, 981 (La.1992). The court held that section to be inapplicable to a disabled NOFD employee who is eligible for retirement with the same amount of benefits under both a disability benefit plan and a tenure-based retirement benefit plan. The City relies on the Third Circuit's holding in Cormier v. Lafayette Parish School Bd., 508 So.2d 207 (La.App. 3rd Cir.1987) wherein Ms. Cormier's choice to use her sabbatical leave in order to recuperate required reduction of her SEB by the amount of her sabbatical leave earnings.
In the instant case, the City failed to prove the amount paid to Chief Miller as accrued annual and sick leave. However, even if there were evidence of the amount of these payments, they are distinguishable from the sabbatical leave at issue in Cormier. This Court rejected set-off of compensation benefits as sick or vacation days in Blanque v. City of New Orleans, 612 So.2d at 952. The Third Circuit itself rejected extension of Cormier in the context of sick leave. In Lewis v. Malone & Hyde, Inc., 626 So.2d 531, 533 (La.App.3rd Cir.1993), it held:
Because sick leave benefits are not among the enumerated benefits to which an employer is entitled an offset under LSA-R.S. 23:1225 ... we affirm the hearing officer's award to Mr. Lewis of benefits for his initial week of disability.
Neither sick leave nor accumulated annual leave are included in the enumeration of statutory set-offs. Applying Cousins' rule of strict construction, we conclude that the hearing officer properly refused to reduce Chief Miller's compensation by the amount, if any, of his accrued annual and sick leave. This assignment of error is without merit.

*1299 FOURTH ASSIGNMENT OF ERROR: The hearing officer erred in awarding penalties and attorney's fees.

A penalty of 12% of unpaid benefits or $50 per day, whichever is greater, is imposed on benefits not paid within the statutory time period. La.R.S. 23:1201(E). The assessment of attorneys' fees incurred in the prosecution and collection of Chief Miller's claim is proper if the City was arbitrary, capricious or without probable cause in its termination of his compensation benefits. La.R.S. 23:1201.2. These penalties are stricti juris and should be imposed only in those instances in which the facts negate probable cause for nonpayment. Crawford v. Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977). An assessment of penalties is proper for the nonpayment of compensation benefits unless nonpayment results from conditions over which the employer had no control or unless the employee's right to such benefits had been reasonably controverted. Blanque v. City of New Orleans, 612 So.2d at 952. Employers must demonstrate that reasonable efforts were made to ascertain the worker's exact condition before denying benefits, and employers have an ongoing duty to review medical reports concerning the disability. Id. Whether an employer acted in an arbitrary or capricious manner is a determination of fact, which should not be disturbed by the appellate court absent manifest error. Carter v. New Orleans Fire Department, 646 So.2d at 460, citing McCray v. Commercial Union Ins. Co., 618 So.2d 483, 489 (La.App. 4th Cir. 1993). Patin testified that the City's sole reason for terminating Chief Miller's benefits was its belief that his disability was caused by a non-covered illness, degenerative disc disease. While both doctors Ruel and Montz mentioned this disease in their reports, in this case, as in Carter, it was quite obvious from the totality of the medical evidence available that Chief Miller's inability to work arose from his October 1991 injury. In this case, as in Carter, the City did not meet the Blanque standard and breached its ongoing duty to review medical reports concerning the injured employee's disability, and to refrain from denying or discontinuing compensation based on inconclusive medical reports. The Hearing Officer found it inexcusable that the City terminated benefits based on a telephone conversation with Dr. Montz, without at least seeking a written report which could and should have then been referred to Chief Miller. The record as a whole supports the Hearing Officer's determination that the City acted unreasonably in terminating benefits. We find that he was not manifestly erroneous or clearly wrong in assessing penalties of 12% on the unpaid benefits, and attorneys' fees in the amount of $5,000. This assignment of error is without merit.

FIFTH ASSIGNMENT OF ERROR: The case should be remanded to determine when and if claimant's benefits should be terminated due to his "retirement" pursuant to La.R.S. 23:1221(3)(d)(iii).
The City failed to raise the retirement issue at trial. Had it done so, it would have met the obstacle of the Louisiana Supreme Court's opinion in Allen v. City of Shreveport, 93-2928 (La. 5/23/94); 637 So.2d 123.
In keeping with the liberal interpretation appropriate for the Worker's Compensation Act, we conclude that a worker retires under LSA-R.S. 23:1221(3)(d)(iii) when: (1) the worker withdraws from the work force; or (2) the worker draws old age social security benefits, whichever comes first. Allen v. City of Shreveport, 637 So.2d at 126-27.
The City did not prove by a preponderance of the evidence that Chief Miller has withdrawn from the work force or has drawn old age social security benefits. The only evidence adduced at trial concerning Chief Miller's status shows that he is operating his chimney sweep business, although at a loss because of his disability. The City cites no authority to support its request for remand on this issue. This assignment of error is without merit.

APPELLEE'S ANSWER TO APPEAL: Appellee William Miller requests that he be awarded attorney's fees and penalties for having to defend a frivolous appeal.
Chief Miller answered this appeal, seeking an increase in the award to reflect *1300 work performed by his attorney on appeal. An increase in attorney's fees is usually awarded when the defendant appeals and obtains no relief, and when the appeal has necessitated additional work on the part of plaintiff's counsel, provided that plaintiff has requested the increase in accordance with proper appellate procedure. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.1989), writ denied 553 So.2d 466 (La.1989).
The legal issues before this Court are well settled by applicable jurisprudence. The Blanque case was decided in January, 1993, one year and two months before the City moved for the suspensive appeal in the instant case. The City was itself a defendant in Blanque. The Carter case, to which the City was a party, was decided eight months before the City filed its appellate brief, and the Allen case was decided two months before the City filed its appellate brief. In light of the clear authority supporting the Hearing Officer's judgment, we find the City's filing and continued prosecution of this suspensive appeal to have been frivolous, requiring counsel for Chief Miller to prepare an answer to the appeal and an appellate brief. The matter was submitted without oral argument. We find an additional attorney's fee of $500 to be reasonable under the particular circumstances of this case.

CONCLUSION
For the foregoing reasons, the judgment of the Hearing Officer is affirmed, and William Miller, appellee, is awarded an additional $500 attorney's fees plus costs for the defense and answer to this appeal.
AFFIRMED WITH ASSESSMENT OF ADDITIONAL ATTORNEY'S FEES.
ARMSTRONG, J., dissents in part, concurs in part.
NOTES
[1] Chief Miller owns Chimney Sweep, a chimney and fireplace cleaning service. He tried to continue that job but had difficulty because of its physical demands and his continuing pain. In 1990, he received $4,780 income from this business. In 1990, its income was $2,778. In 1992, the business lost $1,879. He testified that the business lost $1,087 for the first seven months of 1993.