| xCARTER, Judge,
concurring in part and dissenting in part.
I agree with the majority opinion in its conclusion that Silmon O. Seal (Seal) suffered from an occupational disease. However, I disagree with all other parts of the opinion.
With regard to Seal’s entitlement to supplemental earnings benefits, the threshold inquiry to the recovery of supplemental earnings benefits is that the employee’s injury *119 results in Ms inability to earn wages equal to ninety percent or more of the wages that he was earning at the time of his injury. The employee bears the burden of proving by a preponderance of the evidence that the injury resulted in Ms inability to earn that amount. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Hickman v. City of New Orleans, 95-0210 p. 3 (La.App. 4th Cir. 12/28/95), 666 So.2d 696, 698, writ denied, 96-0264 (La.4/19/96), 671 So.2d 927; Fontenot v. Trans Gulf, Inc., 95-0342 p. 11 (La.App. 1st Cir. 11/9/95), 664 So.2d 1238, 1246. In determining whether the employee is entitled to supplemental earnings benefits, the court should take into account all those factors which might bear on the employee’s ability to earn a wage. Hickman v. City of New Orleans, 666 So.2d at 698.
The jurisprudence is also clear that the analysis of whether the employee has sustained this burden “is necessarily a facts and circumstances one in wMch the court is mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage.” Hickman v. City of New Orleans, 666 So.2d at 698, citing Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989).
The standard of review applicable to factual findings of district courts is also applicable to the factual findings of an admmistrative body or hearing officer. In |2workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the “manifest error-clearly wrong” standard. Ridley v. East Baton Rouge Parish School Board, 96-0661 (La.App. 1st Cir. 12/20/96), 684 So.2d 1152; Alexander v. Pellerin Marble & Granite, 93-1698 pp. 5-6 (La.1/14/94), 630 So.2d 706, 710. For an appellate court to reverse a hearing officer’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the hearing officer or that the finding is clearly wrong. See Ridley v. East Baton Rouge Parish School Board, 684 So.2d at 1154. See also Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Where the fact finder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon' review where conflict exists in the testimony. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83.
Although the majority opimon correctly notes that the manifest error-clearly wrong standard applies to our review of the factual determination of whether an employee has established that he is unable to earn 90% of Ms pre-injury wages, the majority then fails to properly observe that standard and reviews the evidence, maMng de novo factual and credibility determinations. I respectfully submit that the majority opimon fails to properly observe the standard of review required by Stobart. See Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990).
lain the instant case, the majority finds that Seal failed to prove the first step in the analysis of entitlement to supplemental earnings benefits, namely that Seal failed to establish his inability to earn 90% of his pre-injury wages. In so finding, the majority posits that the evidence is insufficient because Seal did not testify that “his disability caused Ms inability to earn 90% of his pre-injury wages” and because there is “inadequate” evidence as to what type of work, if any, Seal is capable of performing and the *120 amount of pay he may earn. However, in looking for the “magic words” in the testimony, the majority overlooks the substance of the testimony and evidence presented at the hearing.
The medical and lay testimony presented at the hearing established that Seal suffered from an occupational disease which prevented him from returning to his $17.36 an hour job as a bogol operator at Gaylord. The majority acknowledged that this finding is correct. Seal testified that he has a high school diploma and began working at the Gaylord facility when he was twenty years old. At the time of the hearing, Seal was fifty-eight years old and had been employed at the facility for more than thirty-eight years, the last fifteen of which had been as a bogol operator. This testimony establishes that Seal has spent his entire work life at his job at the paper mill and has no other discernible skills to utilize to earn a living. Seal testified that he left his employment with Gaylord in 1994 because of his severe bronchial condition. The medical testimony corroborated Seal’s testimony. Clearly, Seal cannot earn his pre-injury wages because he cannot return to his job and because he had no skills other than that of a paper mill worker. Seal testified that he looked for alternative work but was unable to find a job which paid more than minimum wage. Seal acknowledged that “[i]t looks like I’m going to have to go to that.”
In light of the tenet requiring liberal construction in favor of workers’ compensation coverage, I submit that this evidence is sufficient to establish Seal’s prima facie showing that, because of he work-related injury, he is unable to earn 90% of his pre-injury wages. The jurisprudence supports the hearing officer’s determination that such evidence is sufficient to carry the claimant’s burden of proof and that thejjburden then shifts to the employer to show that the employee is physically able to perform work that was offered to him or was available to him in the community. See Hickman v. City of New Orleans, 666 So.2d at 698; Miller v. City of New Orleans, 95-1005 p. 8 (La.App. 4th Cir. 12/14/95), 665 So.2d 1293, 1298-99; Fontenot v. Trans Gulf, Inc., 664 So.2d at 1246; and Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 pp. 3-5 (La.App. 3rd Cir. 10/4/95), 663 So.2d 222, 225.
In Fontenot v. Trans Gulf, Inc., 664 So.2d at 1246, this court considered the combined effects of the claimant’s chronic lumbar problems, which were substantiated by medical testimony and records, and affirmed a hearing officer’s determination that these problems prevented claimant from returning to his former occupation as a truck driver. The appellate court concluded that this testimony, together with the testimony of the claimant and his wife relative to the claimant’s pain, established by a preponderance of the evidence that claimant’s work-related injuries prevented him from earning ninety percent of the wages he was earning at the time of his injury.
In Hickman v. City of New Orleans, 666 So.2d at 698, the court upheld a hearing officer’s determination that the claimant sustained his burden of proof that he was entitled to supplemental earnings benefits. In affirming the hearing officer’s determinations, the appellate court pointed to evidence that Hickman had been employed in his capacity as a fireman for fifteen years, had no other technical skills, and had applied without success at the local employment offices.
In Miller v. City of New Orleans, 95-1005 p. 8 (La.App. 4th Cir. 12/14/95), 665 So.2d 1293, 1298-99, the appellate court affirmed a hearing officer’s determination of a claimant’s entitlement to supplemental earnings benefits. The court noted that the claimant had attended one year of high school and had worked as a stock clerk at a grocery store. He then spent four years in the Navy and received a G.E.D. diploma. After his discharge from the Navy, the claimant worked briefly for a roofing company. Claimant then spent the next thirty years working for the New Orleans Fire Department. His work-related injury prevented his return to his former job. In analyzing this |5evidence, the court concluded that the claimant had made a prima facie case of entitlement to supplemental earnings benefits.
In Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288 pp. 3-5 (La.App. 3rd Cir. 10/4/95), 663 So.2d 222, 225, the appellate *121 court affirmed a hearing officer’s determination that a claimant was entitled to supplemental earnings benefits. At the time of his accident, Mitchell was earning $12.00 per hour. Mitchell had only a seventh grade education, and he worked for the defendant for fifteen years. Although Mitchell had been released to return to his job with restrictions, Mitchell’s attempts at performing his former job were unsuccessful. The appellate court pointed out that the claimant’s own testimony about his experiences and the medical testimony relative to the claimant’s actual abilities supported the hearing officer’s conclusion that Mitchell established his inability to earn 90% of his pre-injury wages.
It is clear from our reading of the record and the written reasons that the hearing officer found that Seal could not go back to his old job and that he has looked for another job, but that he could not find any jobs, except those paying minimum wage. A review of the testimony and other evidence in the instant ease clearly and unequivocally supports the hearing officer’s determination that Seal could not return to his former job and could only find minimum wage jobs. Clearly, Seal was unable to earn at least 90% of $17.36 per hour wages.
In reversing the hearing officer’s determination in the instant ease, the majority cites McClinton v. Rapides General Hospital, 93-1295 (La.App. 3rd Cir. 5/4/94), 640 So.2d 534, 536, writ denied, 94-1438 (La.9/23/94), 642 So.2d 1290, as authority for the proposition that the burden of proof does not shift to the employer until the claimant meets his threshold requirement of establishing his inability to earn 90% of his pre-injury wages. However, there is no dispute that this is what the law requires. The majority simply determined that Seal did not prove the threshold inquiry, despite the contrary factual determination by the hearing officer. Moreover, the McClinton case cited by the majority is factually distinguishable from the instant case. In McClinton, the claimant testified that he applied for numerous jobs, but was unable to find work. However, this evidence was | ¡¡contradicted by the testimony of three of the prospective employers, each of whom had no record of claimant’s applications. Moreover, the claimant’s testimony was fraught with credibility problems. As a result, the hearing officer determined, and the appellate court affirmed, that McClinton failed to carry his initial burden.
After Seal successfully carried his burden of proving his inability to earn wages equal to 90% of his pre-injury wages, the burden shifted to Gaylord to establish that Seal is physically able to perform work that was offered to him or was available to him in the community. This Gaylord failed to do. The testimony presented at trial reveals that no one at Gaylord offered Seal another job, nor did Gaylord establish that there were other jobs available in the community or reasonable geographic area.
On direct examination, Seal testified as follows:
Q. Mr. Seal, did anyone at Gaylord contact you to offer you a job since you filed Workers’ Compensation benefits?
A. No, sir.
Q. Did Dr. Jackson tell you to avoid or stay away from an unclean environment?
A. He sure did.
Mr. Bringer H. Barker, Human Resources Supervisor for Gaylord, testified as follows:
Q. You have not offered Mr. Seal a job, have you, sir?
A. No, I haven’t.
Q. And were you asked by the insurance — who’s your insurance carrier? Gaylord’s?
A. CNA.
Q. Have you been asked by CNA to offer Mr. Seal a job?
A. They have asked if we had any light duty or any jobs that he could bid on, and we did have that available.
Q. Have you communicated—
A. No light duty.
Q. Have you communicated any jobs to either me or Mr. Seal that you think he could do given his restrictions?
A. Directly, no, I haven’t.
17Q- Okay. And you — like you said, you’re not aware of the restrictions put on by Dr. Jackson, so you can’t say that Mr. Seal *122 can do any jobs at that paper mill given the fact that there is exposure to some extent everywhere around that mill.
A. I cannot truthfully testify to that.
For these reasons, I respectfully submit that the hearing officer was eminently correct in his determination that Seal was entitled to supplemental earning benefits. The majority commits legal error in misapplying the proper standard of review. For this court to continue to err in the application of the standard of review as the majority does in the case sub judice and to ignore the legal requirements of Stobart not only invites, but requires continuing reversal by the supreme court.
Further, it is clear that Gaylord did not have a reasonable basis to controvert Seal’s claim for compensation and was arbitrary and capricious in the handling of this matter and should be properly cast for penalties, interest, and attorney’s fees.
Therefore, I respectfully concur in part and dissent in part.