909 So.2d 607 (2004)
Larry HUDSON
v.
HOUSING AUTHORITY OF NEW ORLEANS.
No. 2004-CA-0744.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 2004.
Anthony J. Milazzo, Jr., Miranda Warwick Milazzo Giordano & Hebbler, Metairie, LA, for Plaintiff/Appellant.
Philip J. Borne, Christovich & Kearney, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
The appellant, Larry Hudson, Sr., seeks reversal of the ruling dismissing his claim for workers' compensation benefits, penalties, attorneys' fees and costs. The trial court found that Hudson failed to carry his burden of proving that he suffered a personal injury by accident during the course and scope of his employment. Specifically, the trial court found that Hudson presented two inconsistent versions of how the alleged accident occurred, that his medical records indicated a history of back problems, and that the examining physician failed to find an objective injury resulting from the alleged accident. After review of the record in light of the applicable law, we affirm the judgment of the trial court.

Relevant Facts and Procedural History
Hudson was employed by the Housing Authority of New Orleans ("HANO") at *608 the St. Bernard Housing Project in New Orleans. On November 6, 2001, Hudson allegedly was injured while working as a laborer for HANO. Hudson immediately reported the accident to Ransom McCormick, his supervisor, and an Employer's Report of Occupational Injury or Disease ("Injury Report") was completed. The Injury Report described the accident as follows: "Mr. Hudson was picking up grass with shovel while picking up grass, he somehow twisted his body, injuring his back."
After completing the Injury Report, Hudson was directed to obtain medical treatment at Concentra Medical Center in New Orleans ("Concentra"), where Dr. Jamesetta Tate examined Hudson. Dr. Tate wrote in his report that Hudson described the accident as follows: "while using a shovel he picked up some trash that was too heavy injuring his back." Dr. Tate referred Hudson to physical therapy.
On November 7, 2001, Hudson reported for physical therapy. According to the physical therapy records, Hudson "was shoveling when he twisted his back he heard a `snap'."
On November 8, 2001, Hudson saw Dr. Peter Stevens at the Ochsner Clinic. According to Dr. Stevens' notes, Hudson was "using a shovel leaning the shovel up against his belly and a rake with his right hand to rake garbage in to the shovel and then while picking that up and twisting to dump it into a garbage can, he injured his back."
Hudson was subsequently referred to an orthopedic surgeon. On November 26, 2001, Hudson saw Dr. John Burvant at the Ponchartrain Bone & Joint Clinic in Metairie. According to Dr. Burvant's notes, Hudson described his accident as follows: ". . . he was doing some raking and sweeping and went to dump a garbage can when he started with significant pain in the low back area."
On May 29, 2002, Hudson was deposed. During his deposition testimony, Hudson described his accident as follows: "We were picking up tree stumps and different things that was cut down, and putting them in barrels and emptying them in dumpsters. And I picked up the garbage can and was emptying it, and something snapped in my back."
On September 23, 2004, the trial in this matter was conducted. At the trial, Hudson testified regarding the alleged accident and injury of his back as follows:
Q [counsel for the appellant]: What were you doing?
A [the appellant]: I was picking up branches, tree branches, because they were cutting trees that day. I was also using a shovel to rake up grass and different things and put it in the garbage truck and bring the garbage can to the dumpster and dump it in the dumpster.
Q: Now, the dumpster was right there in the . . . area?
A: It was in the driveway. I had to roll it to the dumpster and pick up on it with one hand and empty it. That's how I hurt my back.
* * *
Q: The [garbage] can had wheels on it?
A: Yes.
Q: So you wheeled the garbage can to the dumpster?
A: Yeah, you wheel it to the dumpster. It was hard to pick up because they had wheels and the wheels kept slipping from under it.
Q: How high did you have to pick up the [garbage] can in order to dump that trash into the dumpster?
A: About four feet.

*609 Q: How tall are you?
A: 5'10½.
Q: So you went to try and pick up the [garbage] can and put the trash in the dumpster and what happened to you?
A: When I bent over and came back down, something popped in my back.
On cross examination, Hudson testified that he lied on his HANO employment application by stating he worked for River-town Florist from 1975 to 1994 and by stating that he had never been convicted of a crime. Hudson admitted that he was incarcerated at Angola from approximately 1972 through 1993 before being exonerated and released. Hudson explained that when his record was expunged, he thought he no longer had to admit to being convicted. According to Hudson's medical records from Angola, he reported a history of back problems dating back to 1959 and 1965, and he suffered numerous back injuries while in custody at Angola. Hudson testified that he lied to Angola officials that he had a history of back problems and new back injuries to avoid working in the hot fields.
Hudson also admitted he had been involved in one car accident in 1997 and two car accidents in 1999, all of which were prior to the alleged November 6, 2001 workplace accident. After each car accident, Hudson complained of and received treatment for serious back and neck injuries.
James Strouder, Hudson's supervisor at HANO, testified at the trial that at the time of the alleged accident, Hudson was on light duty work due to a prior, unrelated, injury to his wrist. Strouder testified that on the date of the alleged accident, Hudson was assigned to "board ups and he was picking up paper". Strouder testified that he never saw Hudson pick up a trashcan and would not have allowed him to do so due to the light duty work restriction. On cross-examination, Strouder admitted that he did not witness the alleged accident and does not recall if he was in the vicinity of the alleged accident at the time it occurred. Strouder testified that he signed the Injury Report, which was completed on November 6, 2001.
Ransom McCormick, Strouder's supervisor and a Maintenance Manager for HANO, testified that at the time of the alleged accident Hudson was a laborer for HANO and that his job duties were picking up trash and cutting grass. McCormick testified that Strouder told him of Hudson's alleged accident and that he, McCormick, did not witness the incident or talk to Hudson about it. McCormick testified that he was aware that Hudson was restricted to light duty work but explained that light duty work was generally only available at HANO for a short period of time. Dr. Burvant testified at the trial by deposition, and he stated that Hudson described the accident as follows: ". . . he was doing some raking and sweeping, and went to dump a garbage can when he started with significant pain in the lower back." During the course of treatment, Dr. Burvant noted that Hudson's condition did not appear to improve. In fact, Dr. Burvant became suspicious that Hudson was exaggerating his ongoing complaints of pain. Dr. Burvant ordered a functional capacity evaluation, which showed that Hudson was capable of light duty work. Dr. Burvant further testified that based upon the appellant's MRI test results, it appeared that Hudson had degenerative changes to a disc in his back that pre-dated the alleged November 6, 2001 accident.
Dr. Burvant further testified that based on the facts as reported by Hudson, the alleged injury would have caused the reported *610 symptoms and would be a new injury despite Hudson's history of prior back injuries. Dr. Burvant admitted that his opinion in this case was based solely on the representations made to him by Hudson, stating: "If Mr. Hudson is not telling me the truth when he tells me that he went over to pick something up and that's when his back pain started, then its totally changes everything, as far as to my opinion, of the relationship between this pain and this event."
Lastly, Dr. Burvant testified that he suspected Hudson was exhibiting "drug-seeking behavior." That is, Hudson would see Dr. Burvant, receive a prescription for narcotic pain medication, and then not see Dr. Burvant again until he was denied a refill. Dr. Burvant testified that he was concerned that Hudson was using different doctors for different refills. Pharmacy records introduced by HANO revealed that Hudson was simultaneously prescribed and had filled prescriptions for various narcotic and non-narcotic pain medications at four different pharmacies between November 7, 2001 and January 20, 2003.

Discussion
Hudson argues that the trial court erred in finding that he did not carry his burden of proving that he suffered a personal injury by accident during the course and scope of his employment with HANO. Hudson claims that any inconsistencies in how he described his accident are not material, that he explained why his Angola medical records showed a history of back injuries, and that Dr. Burvant testified that his injuries were consistent with an injury while dumping a garbage can.
The appellee, HANO, argues that the trial court correctly found Hudson lacked credibility because Hudson presented inconsistent versions of his alleged accident and correctly found that Hudson did not carry his burden of proving the injury resulted from a workplace accident.
The claimant in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Faulkner v. One Source, XXXX-XXXX, p. 4-5 (La.App. 4 Cir. 2/6/02), 809 So.2d 1123, 1126, citing Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). The testimony of the worker alone may be sufficient to discharge this burden, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Faulkner, XXXX-XXXX, p. 4-5, 809 So.2d 1123, 1126, citing West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). La.Rev.Stat. 23:1021(1) defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury, which is more than simply a gradual deterioration or progressive degeneration."
This Court has previously interpreted the amended language of La.Rev.Stat. 23:1021(1) to exclude from the definition of "accident" conditions that are caused by a progressive deterioration. Carter v. New Orleans Fire Department, 94-0338, p. 4 (La.App. 4 Cir. 11/17/94), 646 So.2d 455, 459. However, it has been established that if the claimant is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an "accident" within the meaning of La.Rev.Stat. 23:1021(1). Sterling v. Orleans Parish *611 School Board, 96-0107 (La.App. 4 Cir. 6/26/96), 679 So.2d 167, 170-171; Begue v. Crossover, Inc., 03-0267 (La.App. 1 Cir. 11/21/03) 868 So.2d 100; Richard v. Workover & Completion, 00-0794 (La.App. 3 Cir. 12/6/00) 774 So.2d 361, 364.
In Montgomery v. Orleans Parish School Bd., XXXX-XXXX (La.App. 4 Cir. 6/2/04), 876 So.2d 870, this Court recently discussed the standard of review in workers' compensation cases, stating:
It is well settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest error or clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, 97-0688, p. 4, 704 So.2d at 1164. Where two permissible views of the evidence exist, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840, p. 8, 696 So.2d at 556.
Montgomery, XXXX-XXXX, p. 3-4, 876 So.2d 870, 873.
In Dean v. Southmark Const., XXXX-XXXX (La.7/6/04), 879 So.2d 112, the Louisiana Supreme Court recently reiterated the standard of review when the credibility of a claimant is at issue, stating:
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
Dean, XXXX-XXXX, p. 7, 879 So.2d 112, 117 (internal citation omitted).
In the instant case, the issue was whether an on-the-job injury actually occurred. The alleged accident was un-witnessed, leaving only Hudson's testimony and descriptions of the event. The trial court, therefore, properly evaluated Hudson's in-consistent descriptions of the alleged accident as made to his medical providers, during his deposition, and during his testimony. We agree that Hudson's testimony is not sufficient in this case to discharge his burden of proof because his credibility was called into question. In addition, the trial court was not manifestly erroneous in finding that the medical evidence presented was not sufficient to show a work-place accident. Rather, it was reasonable for the trial court to find that the medical evidence showed that Hudson had subjective complaints of pain that could have been caused by aggravation of a pre-existing degenerative back condition while noting that Hudson's own physician admitted that the objective testing was inconclusive.
Therefore, we find that the trial court was not manifestly erroneous in concluding that "in light of inconsistencies in the claimant's account of how he was injured, and without any objective medical evidence to corroborate his contentions of a work related aggravation," Hudson did not carry his burden of proof.
AFFIRMED.